UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER <br> 1718 Connecticut Ave., N.W. <br> Suite 200 <br> Washington, DC 20009 <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES DEPARTMENT OF <br> HOMELAND SECURITY <br> Washington, D.C. 20528 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No._____ <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2011), for injunctive and other appropriate relief, seeking the release of agency records requested by the Electronic Privacy Information Center from the United States Department of Homeland Security.

### Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) (2011) and 5 U.S.C. § 552(a)(6)(C)(i) (2011). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2011). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) (2011).

### Parties

3.  Plaintiff the Electronic Privacy Information Center ("EPIC") is a public interest

research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC's activities include the review of federal activities and policies to determine their impacts on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains two very popular Internet sites, epic.org and privacy.org, by means of which EPIC publishes information regarding new threats to privacy, including information EPIC has obtained from federal agencies under the FOIA.

4. Defendant United States Department of Homeland Security ("DHS") is an agency established in the Executive Branch of the United States Government. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1) (2011).

## Facts

### DHS has been Working with Third Party Venders to Develop Social Networking Surveillance Programs

5. In February 2011, DHS publicly announced that the agency planned to implement "Publicly Available Social Media Monitoring and Situational Awareness Initiatives."

6. The initiatives were designed to gather information from "online forums, blogs, public websites, and message boards," to store and analyze the information gathered, and then to "disseminate relevant and appropriate de-identified information to federal, state, local, and foreign governments and private sector partners."

7. Previously, DHS had developed surveillance initiatives of public chats and other online forums concerning specific events, such as the January 2010 earthquake in Haiti, the 2010 Winter Olympics, and the April 2010 BP oil spill.

8. In June of 2010, however, DHS signaled its intention to pursue ongoing monitoring of social media services, and published a description of the program on February 1, 2011 in the Federal Register.

9. As set out in the Federal Register and Privacy Impact Assessments, the DHS's social media monitoring initiative would allow the agency to "establish [fictitious] usernames and passwords," to create covert social media profiles to spy on other users, deploy search tools, and record the online activity of particular users, based on the presence of such search terms, as"illegal immigrants," "drill," "infection," "strain," "outbreak," "virus," "recovery," "deaths," "collapse," "human to animal," and "Trojan."

10. DHS proposes to store the information that it obtains from the users of online services for up to five years to make it available across the government, to local, state, and federal agencies, as well as to organizations outside of the United States.

11. The proposed social media monitoring initiative is designed to gather personally identifiable information ("PII"), including full names, affiliations, positions or tiles, and account usernames.

12. The agency plans to collect PII "when it lends credibility to the report or facilitates coordination with federal, state, local, tribal, territorial, foreign, or international government partners."

13. Social media users routinely provide sensitive and personal information in their online communications.

14. Social media users have no reason to believe that the Department of Homeland Security is tracking their every post.

15. The agency anticipates retrieving users information in the normal course of performing social media searches.

16. DHS states that it will redact PII before "dissemination," presumably to other agencies as well as state, local, tribal, and foreign governments, and authorized private sector

entities.

17.  The agency plans regularly to relay the records it produces through this program to "federal, state, local, tribal, territorial, foreign, or international government partners."

18.  The DHS Chief Privacy Officer has stated that the records will be shared both by "email and telephone" to contacts inside and outside of the agency.

19.  The CPO further stated that "[n]o procedures are in place" to determine which users may access this system of records; even Department contractors have full access to the system.

### EPIC Submitted a FOIA Request to DHS Regarding the Agency's Social Media Monitoring Program

20.  On April 12, 2011, pursuant to the Freedom of Information Act, EPIC requested agency records concerning the agency's social media monitoring initiatives. Specifically, EPIC asked the DHS to disclose:

1.  all contracts, proposals, and communications between the federal government and third parties, including, but not limited to, H.B. Gar Federal, Palantir Technologies, and/or Berico Technologies, and/or parent or subsidiary companies, that include provisions concerning the capability of social media monitoring technology to capture, store, aggregate, analyze, and/or match personally-identifiable information;

2.  all contracts, proposals, and communications between DHS and any states, localities, tribes, territories, and foreign governments, and/or their agencies or subsidiaries, and/or any corporate entities, including but not limited to H.B. Gary Federal, Palantir Technologies, and/or Berico Technologies, regarding the implementation of any social media monitoring initiative;

3.  all documents used by DHS for internal training of staff and personnel regarding social media monitoring, including any correspondence and communications between DHS, internal staff and personnel, and/or privacy officers, regarding the receipt, use, and/or implementation of training and evaluation of documents;

4.  all documents detailing the technical specifications of social media monitoring software and analytic tools, including any security measures to protect records of collected information and analysis; and

   5. all documents concerning data breaches of records generated by social media monitoring technology.

21. EPIC also asked DHS to expedite its response to EPIC's FOIA Request on the basis that it pertains to a matter about which there is an urgency to inform the public about an actual or alleged federal government activity, and was made by a person primarily engaged in disseminating information. EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E) (2011). EPIC based the request on the public's and press's interest in social media monitoring generally and the agency's social media monitoring activities specifically.

22. EPIC also requested "News Media" fee status under the Freedom of Information Act, based on its established status as a representative of the news media.

### DHS Failed to Make a Determination Regarding EPIC's FOIA Request and Failed to Produce Any Documents

23. On April 28, 1011, DHS emailed a letter to EPIC, acknowledging the agency's receipt of EPIC's FOIA Request on April 19, 2011, and assigning the request reference number DHS/OS/PRIV 11-0736.

24. DHS's letter held EPIC's request for a fee waiver in abeyance pending the review of responsive records.

25. DHS denied EPIC's request for expedited processing and for "news media" fee status.

26. DHS referred EPIC's request to several DHS components for processing and further response.

27. To date, either the DHS nor any of its components have produced any documents in response to EPIC's FOIA Request.

### EPIC Filed an Administrative Appeal with DHS

28. On May 18, 2011 EPIC appealed the DHS's April 28, 2011 response to EPIC's April 12, 2011 FOIA request.

29. EPIC appealed the DHS's denial of EPIC's request for "news media" fee status, and renewed its request for a fee waiver and expedited processing for the appeal.

30. EPIC's May 18, 2011 appeal was sent to DHS via certified mail and was received by the agency on May 23, 2011.

### DHS Failed to Respond to EPIC's Administrative Appeal and Failed to Produce Any Documents

31. Through the date of this pleading, which is filed more than twenty working days after DHS received EPIC's Administrative Appeal, DHS has neither made a determination regarding EPIC's FOIA Request, nor responded to EPIC's Administrative Appeal.

32. Through the date of this pleading, DHS has failed to produce any documents in response to EPIC's FOIA Request.

33. Through the date of this pleading, DHS has failed to state which documents, if any, it intends to produce in response to EPIC's FOIA Request and EPIC's Administrative Appeal.

### Count I
### Violation of the FOIA: Failure to Comply With Statutory Deadlines

34. Paragraphs 1-33 above are hereby incorporated by reference as if set forth fully herein.

35. DHS' failure to make a determination concerning EPIC's FOIA Request violates the statutory deadlines imposed by the FOIA, including the deadlines set forth in 5 U.S.C. § 552(a)(6)(A) (2011).

36. EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i) (2011).

37. DHS has wrongly withheld responsive agency records from EPIC.

38. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Count II
### Violation of the FOIA: Failure to Grant "News Media" Fee Status

39. Paragraphs 1-38 above are hereby incorporated by reference as if set forth fully herein.

40. DHS unlawfully denied EPIC's request for "news media" fee status.

41. EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public.

42. EPIC is a "representative of the news media" for fee waiver purposes.

43. EPIC has exhausted the applicable administrative remedies with respect to EPIC's request for "news media" fee status.

44. EPIC is entitled to injunctive relief compelling DHS to grant EPIC news media fee status concerning EPIC's FOIA Request.

## Count III
### Violation of the FOIA: Failure to Grant Fee Waiver

45. Paragraphs 1-44 above are hereby incorporated by reference as if set forth fully herein.

46. DHS unlawfully denied EPIC's request for a fee waiver.

47. Disclosure of the information sought by EPIC's FOIA Request will contribute significantly to public understanding of the operations or activities of the government.

48. Disclosure of the information sought by EPIC's FOIA Request is not primarily in EPIC's commercial interest.

49. EPIC has exhausted the applicable administrative remedies with respect to EPIC's request for a fee waiver.

50. EPIC is entitled to injunctive relief compelling DHS to grant EPIC's request for a fee waiver concerning EPIC's FOIA Request.

## **Requested Relief**

WHEREFORE, plaintiff prays that this Court:

A. order defendant to make a complete determination regarding EPIC's FOIA Request within five working days of the date of the Court's Order in this matter;

B. order defendant to produce all responsive agency records within ten business days of the Court's Order in this matter;

C. order defendant to grant EPIC's request for news media status;

D. order defendant to grant EPIC's request for a fee waiver;

E. award plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) (2011); and

F. grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: _____
Ginger McCall, Esquire (DC Bar # 1001104)
Marc Rotenberg, Esquire (DC Bar # 422825)
John Verdi, Esquire (DC Bar # 495764)
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: December 20, 2011