**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 1:11-02261 (JDB) |
| | ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | ) ) | |
| | ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Electronic Privacy Information Center ("EPIC") submits the following reply in support of the cross-motion for summary judgment against Defendant the U.S. Department of Homeland Security ("DHS"). EPIC challenges the DHS's segregability analysis, particularly the assertion that the agency may withheld entire contracts and statements of work without any attempt to identify records that may be released in part, which even the agency concedes could be released. The agency is required under the Freedom of Information Act to disclose all segregable portions of responsive documents. It has failed to comply with that requirement.

EPIC also seeks attorneys' fees and costs in this lawsuit. EPIC qualifies for such relief irrespective of the outcome of the parties' cross-motions for judgment, and it is well settled that such determinations are routinely made in FOIA cases in cross-motions for summary judgment. The agency's argument against that determination at this time will needlessly prolong the resolution if this case.

## **ARGUMENT**

EPIC has correctly challenged the agency's withholding of USSS Vaughn Index Items #4-6, 10, 12, 13 and 16 in full.  The DHS is incorrect in its assertion that EPIC has waived the right to challenge exemptions in association with these documents. EPIC raised objections to the agency's assertion of (b)(4), (b)(6), and (b)(7)(E) with respect to these specific documents. EPIC's Mem. of Points and Auth. at 13-14. While some of the DHS' assertions here may, in fact, be permissible, the explanations offered by the agency to withhold more than fifty pages of documents are plainly insufficient and unreasonable.

In light of the agency's submission of a more complete Vaughn Index, EPIC withdraws its objections regarding the DHS' Vaughn Index. EPIC appreciates the agency's efforts to revise the Vaughn Index in order to comply with the requirements EPIC had cited in EPIC's Memorandum of Points and Authorities, including providing sufficiently detailed descriptions of documents, providing sufficiently detailed justification for the withholding of documents and explaining in greater detail the commercial information redacted. Def's Reply at 6. Of course, the agency's submission of the revised Vaughn Index concedes the first argument in EPIC's Motion for Summary Judgment, that "DHS's Vaughn Index is Insufficient." EPIC's Mem. of Points and Auth. at 7-12.

## I.    **The DHS has Still Not Released All Segregable Portions of Documents**

As discussed in EPIC's Memorandum of Points and Authorities, the USSS is withholding USSS Vaughn Index Items #4-6, 10, 12, 13 and 16 in their entirety. USSS Vaughn Index Item #10 is a twenty-two page presentation and USSS Vaughn Index Items #4-6 and 16 are various contracts. USSS Vaughn Index at 2-3, 6, 9. Additionally, USSS Vaughn Index Items #12 and 13 are emails that contain attached contract modifications that were withheld in their entirety. USSS

Vaughn Index at p. 7. With respect to the above-mentioned documents, even with the Supplemental Declaration of Brady Mills, the USSS failed to provide sufficient justification for withholding these documents in full. 5 U.S.C. § 552(b)("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection"); *see also Roth v. U.S. Dep't of Justice,* 642 F.3d 1161, 1167 (D.C. Cir. 2011) (finding that an agency "must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)"); *North v. U.S. Dep't of Justice,* 774 F.Supp.2d 217, 222 (D.D.C. 2011) (citing *Oglesby v. U.S. Dep't of the Army,* 79 F.3d 1172, 1178 (D.C. Cir. 1996)). "The agency bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information." *Mokhiber v. U.S. Dep't of Treas.*, 335 F. Supp. 2d 65, 69 (D.D.C. 2004), *citing Army Times Pub. Co. v. Dep't of Air Force,* 998 F.2d 1067, 1068 (D.C. Cir. 1993); *Mead Data Central, Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977). "The agency's justification must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption." *Missouri Coal. for Env't Found. v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1212 (8th Cir. 2008), *citing Schiller,* 964 F.2d at 1209-10 (citing *Schwartz v. IRS,* 511 F.2d 1303, 1306 (D.C.Cir.1975) and *King v. U.S. Dep't of Justice,* 830 F.2d 210, 224 (D.C.Cir.1987)). In addition to a statement of its reasons, the agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document. *Mead Data Ctr. Inc. v. Dep't of Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977). "Requiring a detailed justification for an agency decision that non-exempt material is not segregable will not only cause the agency to reflect on the need for secrecy and improve the adversarial position of FOIA plaintiffs, but it will

also enable the courts to conduct their review on an open record and avoid routine reliance on in camera inspection." *Id.* at 261-62.

The agency cites a footnote in *Mead Data Ctr.* to support its argument that it does not need to disclose segregable portions of several documents. But *Mead Data Ctr.* stands for the opposite proposition. In that case, the court rejected the agency's arguments in favor of withholding entire documents and forced the agency to produce a more detailed justification of its withholdings. *Mead Data Ctr.* 566 F.2d at 262 (holding that "we therefore remand the case for further proceedings under the narrower constructions outlined above and direct that the segregability inquiry be augmented by a more detailed justification of the Air Force's decision, accompanied by an indication of the proportion of the material which is non-exempt and how it is distributed throughout the documents).

In response to EPIC's Motion for Summary Judgment and associated Memorandum of Points and Authorities, the agency has offered up a Supplemental Declaration by Brady Mills, Special Agent in Charge of USSS' FOIA Office. This Supplemental Declaration contains precious few pieces of additional information. In fact, several of the entries contain nothing more than a boilerplate language ("While portions of the standard form such as street addresses, order number, and similar basic information, general sentences or sentence fragments, and standardized contract language, could be released, divorced from the document as a whole, and without the context of what the contract modifications are, such information would be of minimal use or value") and verbatim copy and pasted information from the USSS' Vaughn Index. *See e.g.* Supplemental Declaration at ¶6-8; 22-24; USSS Vaughn Index at Items 4 and 12. Consequently, this Supplemental Declaration is just as insufficient as the original Vaughn Index. It is not "relatively detailed, correlating specific parts of the requested documents with the basis

for the applicable exemption." *Missouri Coal. for Env't Found. v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1212 (8th Cir. 2008). Nor does the USS identify what proportion of each document is exempt vs. non-exempt, as required. *Mead Data Ctr. Inc.* 566 F.2d at 261 (D.C. Cir. 1977). This analysis does not provide sufficient detail for the Court and EPIC to evaluate the agency's claims, as contemplated by the court in *Mead Data Ctr.,* 566 F.2d 242.

The sparse information provided by the USSS is insufficient to meet the agency's burden. Though the agency has provided thin descriptions of the items in question, EPIC is able to challenge several of the agency's withholdings. With respect to the Power Point presentation and the two email chains (with associated contracts) of USSS Vaughn Index Items #10, 12, 13 (respectively), EPIC has dealt with these items sufficiently in its Memorandum of Points and Authorities. EPIC Mem. of Points and Auth. at 12-14. The contracts and statement of work, however, require additional discussion.

Contracts and statements of work are routinely disclosed to FOIA requesters. In fact, in this very case, the agency has disclosed several contracts and statements of work. First Interim Document Disclosure at 8, 55 (Contracts); 22, 50, 77 (Statements of Work).[1] These contracts and statements of work contain generic, but helpful, language describing, very generally – and in a way that doesn't implicate any possibility of circumvention, disclosure of confidential information, or disclosure of private information – the programs that the agency is using taxpayer money to fund. For example: "The contractor shall provide media monitoring and social media/networking support services to the DHS Office of Operations Coordination and Planning," *id.* at 8; "[t]he contractor shall monitor, collect, analyze, and distribute operationally relevant real-time open source information to homeland security issues 24/7/365," *id.* at 23. EPIC asks for the disclosure of similar information here. Certainly exact monetary figures, names and contact

---

[1] https://epic.org/foia/epic-v-dhs-media-monitoring/EPIC-FOIA-DHS-Media-Monitoring-12-2012.pdf

information, and details about specific techniques and algorithms could be properly exempted.

But in a typical government contract or statement of work these items would only make up a

small portion of the document.

General language such as the language above cannot be said to satisfy the requirements

for Exemptions b(7)(E), specifically. Exemption 7(E) applies to law enforcement records which,

if disclosed, would risk circumvention of the law. *PHE, Inc. v. Department of Justice,* 983 F.2d

248, 249-50 (D.C.Cir.1993). This exemption, however, may not be asserted to withhold "routine

techniques and procedures already well-known to the public, such as ballistic tests,

fingerprinting, and other scientific tests commonly known." *Ferri v. Bell,* 645 F.2d 1213, 1224

(3d Cir.1981) (citing H.R.Conf. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974), *reprinted in*

1974 U.S.C.C.A.N. 6285, 6291). It is difficult for the agency to argue that the disclosure of

general details about the technologies it has purchased ought to be protected under this

exemption in light of the agency's disclosure of very similar general information in other

contracts and statements of work, First Interim Document Disclosure at 8, 55 (Contracts); 22, 50,

77 (Statements of Work)[2], detailed testimony on this program before Congress, *Enhancing*

*Intelligence Gathering and Ensuring Privacy, hearing on DHS Monitoring of Social Networking*

*and Media before the Committee on Homeland Security's Subcommittee on Counterterrorism*

*and Intelligence*, 112th Cong. (2012), and recently-issued Privacy Compliance Review of the

NOC [National Operations Center] Publicly Available Social Media Monitoring and Situational

Awareness Initiative.[3]  Certainly language that broadly describes a program that is already "well-

known to the public," ought to be disclosed here. *See Ferri,* 645 F.2d at 1224.

---

[2] https://epic.org/foia/epic-v-dhs-media-monitoring/EPIC-FOIA-DHS-Media-Monitoring-12-2012.pdf
[3] Available at:
http://www.dhs.gov/sites/default/files/publications/privacy/PCRs/PCR%20NOC%20Situational%20Awareness%20I
nitiative%20%28FINAL%29%2020121108.pdf

These factual portions are something more than the "disjointed words, phrases or even sentences which taken separately or together have minimal or no information content" that the agency discusses in its Reply. Def.'s Reply at 7. They would provide EPIC, and the public, with necessary information about the nature of the agency's social media monitoring program.

The agency is legally bound to conduct a proper segregability analysis – an analysis that is more substantial than the copy and pasted Supplemental Declaration provided here – and disclose to EPIC all portions of documents, including general descriptions of the agency's already well-known social media monitoring practices. 5 U.S.C. § 552(b).

## II.     EPIC is Entitled to Recover its Costs and Fees

On the fees issue, the DHS focuses its reply on the argument that EPIC's request is premature. Def.'s Reply Br. at 8 ("[T]he Court should defer consideration of attorney's fees and costs until after it resolves the merits of the case."). However, the Federal Rules specifically contemplate summary adjudication of liability, even when the amount of damages is uncertain. Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."). Such determinations regarding attorneys fees are often made in FOIA cases. *See, e.g., EPIC v. DHS,* No. 11-945 BJR, 2012 WL 4044986 (D.D.C. Sept. 14, 2012). EPIC seeks just such a judgment in this case—EPIC has proved it is eligible and entitled to attorneys' fees, asks for summary judgment as to the DHS's liability, and will submit a bill of costs at the conclusion of the lawsuit.

The DHS attempts to convince the Court that EPIC's argument on this point is improper because the parties may be able to resolve the matter without Court intervention. Def.'s Reply Br. at 9. However, a decision by the Court will serve judicial economy by narrowing the issues and guiding these discussions for the parties toward a faster resolution. Here, the issue at hand—

EPIC's entitlement to attorneys' fees and costs—is clear. As discussed in EPIC's Motion, EPIC is plainly eligible to and entitled to recover its attorneys' fees in this matter because it has substantially prevailed and has met the four factors required for entitlement. 5 U.S.C. § 552(a)(4)(E).

The DHS argues that EPIC's motion is premature and cites several cases in which courts delayed a decision regarding fees while "substantive issues" remained. Def.'s Reply Br. at 10. However, EPIC's Reply motion marks the final substantive issue remaining in this case. There is no reason why the court cannot, after resolving the segregability and exemption issues, then adjudicate the fees issue within the same order. Indeed, EPIC has recently concluded a case against the same defendant in which the Court considered the fees issue simultaneous with the other issues raised in motions for summary judgment. *EPIC v. DHS,* No. 11-945 BJR, 2012 WL 4044986 (D.D.C. Sept. 14, 2012). This increases judicial efficiency and may lower the cost of litigation in this case by allowing the fees issue to be resolved more quickly, negating the necessity for DHS to pay for the "fees on fees" that EPIC would be entitled to for time it spends filing additional motions regarding fees. *EPIC v. DHS*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011)(Finding that "[i]ndeed, it is a common practice in this jurisdiction to award fees on fees in FOIA cases").

The agency offers no case or statute that prohibits the Court from ruling on this issue now. The agency cites a handful of cases in support of the proposition that Courts may postpone a decision on fees until after the parties' cross-motions are resolved. *See* Def.'s Reply Br. at 9. These cases contemplate the post-judgment settlement of attorneys' fees, but they do not require it, nor do they prohibit the Court from granting EPIC's request for fees at this stage. Though

Defendant argues otherwise, the record certainly contains sufficient information to justify an award of fees.

In order for a court to award attorneys' fees, it must first determine that a plaintiff is eligible for fees because it has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(ii)(II). One way in which a plaintiff may "substantially prevail" is if its lawsuit elicits a "voluntary or unilateral change in position by the agency." *Id.* The key question under this "catalyst theory" is whether "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). As one D.C. court has recently held, "[a]lthough the mere filing of the complaint and the subsequent release of documents is insufficient to establish causation it is certainly a salient factor in the analysis," *EPIC v. DHS,* 811 F. Supp. 2d 216, 232 (D.D.C. 2011) *quoting Weisburg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 2009 WL 1743757, at *3 (D.D.C. 2009) (internal quotations omitted).

In that case, the court ruled that EPIC had substantially prevailed because "the plaintiff's lawsuit has clearly elicited a voluntary or unilateral change in [DHS's] position." *Id.*  The facts in that case were strikingly similar to those in the present case: EPIC filed two FOIA requests with DHS, yet it was not until EPIC filed suit that DHS finally produced hundreds of pages of documents. Although DHS subsequently showed that a portion of the records in its possession were properly withheld, it did not make a similar showing for the approximately 1,766 pages of non-exempt documents ultimately produced to the EPIC during this litigation. *Id.*

Consequently, the court found that "[g]iven DHS's long record of non- compliance to the plaintiff's FOIA requests, followed by DHS's disclosure of a substantial quantity of non-exempt

records in response to this suit, the court concludes that the plaintiff obtained relief with regard

to the non-exempt records by catalyzing a voluntary change in DHS's conduct. The plaintiff has

thus 'substantially prevailed' and is eligible for attorney's fees." *EPIC v. DHS,* 811 F. Supp. 2d

216*, citing Judicial Watch, Inc.*, No. 08-02133, 2009 WL 1743757, at *9 (D.D.C. 2009)

(awarding fees based on the catalyst theory of recovery). EPIC and DHS have participated in

other cases with similar factual patterns that resulted in EPIC being awarded fees. *See e.g. EPIC*

*v. DHS,* No. 11-945 BJR, 2012 WL 4044986 (D.D.C. Sept. 14, 2012).

Here, too, EPIC's lawsuit plainly served as a catalyst for DHS's disclosure of thousands

of pages of documents. As detailed in EPIC's Motion for Summary Judgment, EPIC filed its

FOIA request concerning social media monitoring on April 12, 2011. Pl. Motion for Summ.

Judg. at 3. On December 20, 2011, after receiving no substantive determination from the DHS,

EPIC filed this lawsuit challenging the agency's wrongful withholding of documents.  Finally,

on January 10, 2012, 285 pages of responsive documents. On February 6, 2012, the agency

released an additional 39 pages of documents. On May 31, 2012, the agency released another

213 pages of documents. On July 9, 2012, the agency released a final 80 pages of documents.

"The institution and prosecution" of this suit plainly "cause[d] the agency to release the

documents obtained during the pendency of the litigation."

EPIC is also entitled to fees because it has satisfied the four relevant factors: – 1) "the

benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the

complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4)

"whether the government's withholding of the records sought had a reasonable basis in law." H.

Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of*

*Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm.

Print 1975); *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

DHS argues in its Reply that EPIC has not satisfied the first and fourth factors. Def.

Reply at 26-27. This is false. There was great public benefit derived from this case, as detailed in

EPIC's Motion for Summary Judgment. The documents obtained by EPIC in this case were

featured in stories by numerous news media organizations, including the *Washington Post,*

Reuters, *ComputerWorld,* ITWorld, and *Forbes* magazine. *See* Ellen Nakashima, "DHS

monitoring of social media concerns civil liberties advocates," *Washington Post*, Jan. 13, 2012.[4]

*See also* Mark Hosenball, "Homeland Security watches Twitter, social media," Reuters, Jan. 11,

2012;[5] Jaikumar Vijayan "DHS media monitoring could chill public dissent, EPIC warns,"

Computer World, Jan. 16, 2012;[6] Mark Rockwell, "DHS social media monitoring practices

revealed under FOIA," Government Security News, May 29, 2012;[7] Robert N. Charette, "Do

You Need to Worry About DHS Looking at Your Social Media Conversations?" IEEE

Spectrum, May 29, 2012;[8] Kevin Fogarty, "DHS list of words you should never ever blog or

Tweet. Ever." IT World, May 31, 2012;[9] Reuven Cohen, "Dept. of Homeland Security Forced to

Release List of Keywords Used to Monitor Social Networking Sites," *Forbes*, May 26, 2012.[10]

The documents obtained by EPIC in this matter, subsequent to the filing of this lawsuit,

were the basis of two stories in the *New York Times*. Charlie Savage, "Federal Contractor

---

[4] http://www.washingtonpost.com/world/national-security/dhs-monitoring-of-social-media-worries-civil-liberties-advocates/2012/01/13/gIQANPO7wP_story.html
[5] http://www.reuters.com/article/2012/01/11/us-usa-homelandsecurity-websites-idUSTRE80A1RC20120111
[6] http://www.computerworld.com/s/article/9223441/DHS_media_monitoring_could_chill_public_dissent_EPIC_warns
[7] http://www.gsnmagazine.com/node/26448?c=federal_agencies_legislative
[8] http://spectrum.ieee.org/riskfactor/telecom/internet/do-you-need-to-be-careful-about-the-words-you-use-in-social-media-conversations
[9] http://www.itworld.com/security/279429/dhs-list-words-you-should-never-ever-blog-or-tweet-ever
[10] http://www.forbes.com/sites/reuvencohen/2012/05/26/department-of-homeland-security-forced-to-release-list-of-keywords-used-to-monitor-social-networking-sites/

Monitored Social Network Sites," *New York Times*, Feb. 13, 2012, at A13; [11] Charlie Savage,

"Homeland Analysts Told to Monitor Policy Debates in Social Media," *New York Times,* Feb.

22, 2012, at A17.[12]

The documents obtained in this case also inspired a Congressional hearing in which

several members of Congress expressly referenced EPIC's work in this case. On February 16,

2012, Congress held a hearing entitled "DHS Monitoring of Social Networking and Media:

Enhancing Intelligence Gathering and Ensuring Privacy." Representative Patrick Meehan, the

Chairman of the Subcommittee on Counterterrorism and Intelligence, stated:

> A few weeks ago, it was reported that DHS had instituted a program to produce
> short reports about threats and hazards. However, in something that may cross the
> line, these reports also revealed that DHS had tasked analysts with collecting
> intelligence on media reports that reflect adversely on the U.S. Government and
> the Department of Homeland Security.
>
> In one example, DHS used multiple social networking tools - including Facebook,
> Twitter, three different blogs, and reader comments in newspapers to capture
> resident's reactions to a possible plan to bring Guantanamo detainees to a local
> prison in Standish, MI.
>
> In my view, collecting, analyzing, and disseminating private citizens' comments
> could have a chilling effect on individual privacy rights and people's freedom of
> speech and dissent against their government.

*Enhancing Intelligence Gathering and Ensuring Privacy, hearing on DHS Monitoring of Social*

*Networking and Media before the Committee on Homeland Security's Subcommittee on*

*Counterterrorism and Intelligence*, 112th Cong. (2012) (statement of Patrick Sheehan, Chairman,

Subomm. On Counterterrorism and Intelligence).[13] Representative Jackie Speier, the

Subcommittee's ranking member, stated:

---

[11] http://www.nytimes.com/2012/01/14/us/federal-security-program-monitored-public-opinion.html
[12] http://www.nytimes.com/2012/02/23/us/house-questions-homeland-security-program-on-social-media.html
[13] http://homeland.house.gov/hearing/subcommittee-hearing-dhs-monitoring-social-networking-and-media-enhancing-intelligence

I am deeply troubled by the document that has just been put into the record by epic.org, and while you have probably not had the opportunity yet to review it, Mr. Chairman, I would like to ask, after they do review it, to report back to this Committee, and provide us with answers to the questions raised. So I'm going to start with a couple of them. They made a FOIA request back in April. DHS ignored it. And then EPIC filed a lawsuit on December 23, 2011 when the agency failed to comply with the FOIA deadlines. And as a result of filing the lawsuit, DHS disclosed to EPIC 285 pages of documents. So I just want to make a note of that, that you shouldn't stonewall FOIA requests. You should comply with them within the deadlines. No entity should be required to file a lawsuit….

But what's interesting about what they have pointed out is that, while you say there's no personally identified information in this contract with General Dynamics in fact, they point out that there are some exceptions to the "no-PII" rule… I find that outrageous. And I would like to ask you to amend the contract with General Dynamics to exempt that kind of information from being collected.

*Enhancing Intelligence Gathering and Ensuring Privacy, hearing on DHS Monitoring of Social Networking and Media before the Committee on Homeland Security's Subcommittee on Counterterrorism and Intelligence*, 112th Cong. (2012) (comments of Jackie Speier, Ranking Member, Subomm. On Counterterrorism and Intelligence).[14]

EPIC's work on this case continues to produce public benefits. On November 8, 2012, the DHS released the Privacy Compliance Review of the NOC [National Operations Center] Publicly Available Social Media Monitoring and Situational Awareness Initiative.[15] This review of the agency's practices arose specifically from the concerns raised by EPIC and the media regarding the agency's social media monitoring program – the details of which were first revealed in documents disclosed as a result of this case.

DHS asserts that the reasonableness of its withholding of documents cannot be evaluated at this time. However, the agency's actions in this case strongly indicate that its withholdings

---

[14] http://homeland.house.gov/hearing/subcommittee-hearing-dhs-monitoring-social-networking-and-media-enhancing-intelligence
[15] Available at:
http://www.dhs.gov/sites/default/files/publications/privacy/PCRs/PCR%20NOC%20Situational%20Awareness%20Initiative%20%28FINAL%29%2020121108.pdf

were not reasonable. Even if it can justify every withholding that it has argued in its Motion for Summary Judgment, the agency still wrongly withheld over 500 pages of documents that were released to EPIC only after the initiation of this lawsuit, nearly a year after EPIC's initial FOIA request was filed. The agency has made no proper assertion that the withholding of these documents – which have subsequently been disclosed to EPIC – was reasonable. It has made no excuse because there is no excuse: the agency simply failed to comply with the law.

## CONCLUSION

For the reasons stated herein and in the Plaintiffs Motion for Summary Judgment, the Court should grant summary judgment in Plaintiff's favor and award Plaintiff fees and costs.

Respectfully submitted,

_____ /s/ Ginger McCall_____
MARC ROTENBERG
GINGER MCCALL
Electronic Privacy Information Center
1718 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 483-1140
Counsel for Plaintiff


Dated: November 9, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2012, I served the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** by electronic case filing upon:

> STUART F. DELERY
> Assistant Attorney General
> U.S. Department of Justice
>
> JEAN-MICHEL VOLTAIRE
> U.S. Department of Justice
> Civil Division, Federal Programs Branch

 *\_\_\_\_\_/s/ Ginger P. McCall_____*
 GINGER P. MCCALL (DC Bar # 1001104)
 *Counsel for Plaintiff*