**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,** | |
| **Plaintiff,** | |
| v. | Civil Action No.  11-2261 (JDB) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

Plaintiff the Electronic Privacy Information Center ("EPIC") brings this action against

defendant the U.S. Department of Homeland Security ("DHS") under the Freedom of Information

Act ("FOIA"), 5 U.S.C. § 552.  Before the Court are [12] [16] the parties' cross motions for

summary judgment.  For the reasons set forth below, both motions will be granted in part and

denied in part.

**BACKGROUND**

In February 2011, DHS announced its intention to implement a new system of social

media monitoring initiatives, titled "Publicly Available Social Media Monitoring and Situational

Awareness Initiative System of Records."  See Compl. [ECF 1] ¶ 5; see also 76 Fed. Reg. 5603

(Feb. 1, 2011).  On April 12, 2011, EPIC submitted a FOIA request for DHS records concerning

these social media monitoring initiatives.  Id. ¶ 20.  Specifically, EPIC asked for the following:

    1.      All contracts, proposals, and communications between the federal government
           and third parties, including, but not limited to, H.B. Gary Federal, Palantir

Technologies, and/or Berico Technologies, and/or parent or subsidiary companies, that include provisions concerning the capability of social media monitoring technology to capture, store, aggregate, analyze, and/or match personally-identifiable information;

2.      All contracts, proposals, and communications between DHS and any states, localities, tribes, territories, and foreign governments, and/or their agencies or subsidiaries, and/or any corporate entities, including but not limited to H.B. Gary Federal, Palantir Technologies, and/or Berico Technologies, regarding the implementation of any social media monitoring initiative;

3.      All documents used by DHS for internal training of staff and personnel regarding social media monitoring, including any correspondence and communications between DHS, internal staff and personnel, and/or privacy officers, regarding the receipt, use, and/or implementation of training and evaluation documents;

4.      All documents detailing the technical specifications of social media monitoring software and analytic tools, including any security measures to protect records of collected information and analysis; and

5.      All documents concerning data breaches of records generated by social media monitoring technology.

Id.  After receiving EPIC's FOIA request on April 19, 2011, the DHS Privacy Office tasked five DHS component agencies with searching for responsive records.  See Def.'s Mot. for Summ. J. [ECF 12], Attach. 3, Decl. of James Holzer ("Holzer Decl.") ¶¶ 7, 11-13 (request referred on April 26 and 29).  DHS informed EPIC that it had received EPIC's request on April 28.  Id. ¶ 10.

As of December 20, 2011, DHS had not produced any documents in response to EPIC's request.  See Compl. ¶ 27.  Hence, EPIC filed this action, seeking an order enjoining DHS to release the requested records.  See id. ¶ 38.

In January 2012, DHS began releasing records in response to EPIC's FOIA request.  By January 10, DHS and its component agencies had located and reviewed 341 pages of responsive records.  See Holzer Decl. ¶ 15.  Of those, DHS released 175 pages in full, released 110 pages

with redactions, and withheld 56 pages in full; the redactions and withholdings were made under

FOIA Exemptions 3, 4, 5, 6, 7(C), and 7(E).  See id.  On February 6, 2012, after reviewing an

additional 39 pages of responsive documents, DHS released 24 pages in full and released 15

pages with redactions under FOIA Exemptions 6, 7(C), and 7(E).  Id. ¶ 17.

     The DHS Privacy Office also tasked the U.S. Secret Service with searching for records

responsive to EPIC's FOIA request.  Id. ¶ 14.  The Secret Service located 365 pages of responsive

records.  See Def.'s Mot. for Summ. J., Attach. 5, Decl. of Julie Ferrell ("Ferrell Decl.") ¶ 26.  It

released 55 pages in full on July 2, 2012, and another 32 pages in full on July 9, and released 48

pages with redactions and withheld 230 pages under FOIA Exemptions 4, 5, 6, 7(C), and 7(E).

Id. ¶¶ 26-29.

     DHS then moved for summary judgment, arguing that it had conducted an adequate

search for records, released all responsive, nonexempt records, and properly withheld exempt

records under the asserted FOIA exemptions.  See Def.'s Mot. for Summ. J., Attach. 2, Mem. in

Supp. ("Def.'s MSJ") 7-8.  EPIC cross moved for summary judgment, challenging the sufficiency

of DHS's Vaughn index and the segregability analysis as to seven documents withheld in full by

the Secret Service.  See Pl.'s Opp'n & Cross Mot. for Summ. J. [ECF 16], Attach. 1, Mem. in

Supp. ("Pl.'s Cross Mot.") 1.  EPIC also requested attorney's fees and costs.  Id. at 14.  DHS

responded by providing a revised, more detailed Vaughn index and a supplemental declaration on

the segregability of the withheld Secret Service documents.  See Def.'s Reply & Opp'n [ECF 20],

Attachs. 1, 3.  It asked the Court to deny EPIC's attorney's fees request as premature.  See id. at 8.

In light of DHS's revisions to its Vaughn index, EPIC withdrew its Vaughn index objections.

See Pl.'s Reply [ECF 22] 2.  However, it continues to challenge the segregability analysis for the

withheld Secret Service documents and to claim entitlement to attorney's fees and costs. <u>See</u> <u>id.</u> at 1-2.

## LEGAL STANDARDS

FOIA requires federal agencies to release all records responsive to a proper request except those protected from disclosure by any of nine enumerated exemptions set forth at 5 U.S.C. § 552(b). A district court is authorized "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); <u>see also</u> <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 139 (1980). The agency has the burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." <u>Goland v. CIA</u>, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted); <u>accord</u> <u>Maydak v. U.S. Dep't of Justice</u>, 218 F.3d 760, 764 (D.C. Cir. 2000).

"FOIA cases typically and appropriately are decided on motions for summary judgment." <u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, the district court may award summary judgment to an agency on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); accord Vaughn v. Rosen,

484 F.2d 820, 826 (D.C. Cir. 1973).

## DISCUSSION

The only issues remaining in this dispute relate to segregability and attorney's fees.  The

Court will address each issue in turn.

I.       Segregability

Even where an agency has established the applicability of one or more FOIA exemptions,

"it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested

record(s)."  See Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 58 (D.C. Cir.

2003); see also 5 U.S.C. § 552(b).  "[N]on-exempt portions of a document must be disclosed

unless they are inextricably intertwined with exempt portions."  Mead Data Cent., Inc. v. U.S.

Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977); accord Sussman v. U.S. Marshals Serv.,

494 F.3d 1106, 1116 (D.C. Cir. 2007).  To justify withholding a document in full, an agency

must show with "reasonable specificity" why the document cannot be further segregated, see

Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation

marks omitted), or why the document is not reasonably segregable – for example, because the

nonexempt material "would be an essentially meaningless set of words and phrases," see Mead

Data, 566 F.2d at 261.

Here, EPIC contends that the Secret Service has not given sufficient justification for

withholding in full seven documents, listed in the Secret Service's Vaughn index as Documents

4, 5, 6, 10, 12, 13, and 16.  See Pl.'s Reply 2-7.  DHS argues that the seven documents are

properly withheld in full, and points to Secret Service declarations stating that the Secret Service

carefully reviewed these documents and concluded that none is reasonably segregable.  See Def.'s

Reply & Opp'n 7; see also id., Attach. 3, Decl. of Brady J. Mills ("Mills Decl.") ¶¶ 4, 8, 12, 15,

20, 23, 26; Ferrell Decl. ¶¶ 47-48.

Four of the seven documents – Documents 4, 5, 6, and 16 – are contracts or contract

packets that include related documents such as statements of work.  The Secret Service has

asserted FOIA Exemption 7(E) as to each of these records, which involve software and systems

used by the Secret Service in carrying out its protective intelligence functions.  See Mills Decl.

¶ 7, 10, 15, 26; see also id. 5 U.S.C. § 552(b)(7)(E) (exempting "records or information compiled

for law enforcement purposes" that "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law").  According to the Secret Service, some information in each of the

four documents, such as standard contract language, the street address and order number, and

sentences about the period of performance, "could be segregated and released."  See Mills Decl.

¶¶ 7, 12, 15, 26.  But, it says, such information is "not reasonably segregable" because it has

"minimal or no informational content related or responsive to Plaintiff's FOIA request, either

separately or taken together."  See id.

EPIC does not dispute that Exemption 7(E) applies to these contracts and related

documents.  Rather, it argues that the agency's justification for not disclosing segregable portions

of the documents is insufficient.  See Pl.'s Reply 4-7.  The Court agrees.  Citing a footnote in

Mead Data, DHS argues that it properly withheld Documents 4, 5, 6, and 16 in full because the

nonexempt information in the documents has minimal or no value, either separately or taken

together.  See Def.'s Reply & Opp'n 7-8 (citing Mead Data, 566 F.2d at 261 n.55 ("[A] court may

decline to order an agency to commit significant time and resources to the separation of

disjointed words, phrases, or even sentences which taken separately or together have minimal or

no information content.")).  But the standard contract language and other basic information in

Documents 4, 5, 6, and 16 do not equate to the kind of "disjointed words, phrases, or even

sentences" referred to by the court in Mead Data.  The nonexempt (and concededly segregable)

information here has meaning, and the agency may not withhold information simply because its

"value to the requestor" may be low.  See Mead Data, 566 F.2d at 261 n.55.  "FOIA mandates

disclosure of information, not solely disclosure of helpful information."  Stolt-Nielsen Transp.

Grp. v. United States, 534 F.3d 728, 734 (D.C. Cir. 2008) (rejecting argument that redacted

documents could be withheld because they "would provide no meaningful information").

Moreover, there is no plausible argument here that segregating and producing these portions of

four contract documents would require DHS "to commit significant time and resources."  See

Mead Data, 566 F.2d at 261 n.55.  The Court thus concludes that DHS has not disclosed all

reasonably segregable portions of Documents 4, 5, 6, and 16.

   The same goes for Documents 12 and 13, two September 2011 emails, each with a two-

page contract modification attached.[1]  See Mills Decl. ¶ 22.  The agency released both emails

with redactions but withheld the attachments under FOIA Exemption 7(E) because they describe

changes to a system used to identify, analyze, and investigate threats against Secret Service

protectees.  See id.  Again, the Secret Service admits that some portions of the documents, "such

---

[1] Presumably, the two attachments are the same, except that Document 12 is an
unexecuted version of the contract modification and Document 13 is an executed version.  See
Mills Decl. ¶ 22.

as street address, order number, and similar basic information, general sentences or sentence fragments, and standardized contract language," could be released.  See id. ¶ 23.  But the agency is nevertheless withholding such information on the ground that it "would be of minimal use or value."  See id.  As stated above, this is not a sufficient justification.  An agency may not withhold segregable, nonexempt portions of a document just because those portions may be less than helpful to the person or entity requesting the document.  See Stolt-Nielsen, 534 F.3d at 734. Because DHS has not shown that Documents 12 and 13, like Documents 4, 5, 6, and 16, are properly withheld in full, it must disclose all reasonably segregable, nonexempt portions of those documents as well.

The final document at issue, Document 10, is a 22-page PowerPoint presentation dated January 2010 and entitled "United States Secret Service, Cyveillance Overview."  See Mills Decl. ¶ 18.  The presentation was prepared specifically for the Secret Service and, as a whole, "reveals information about the Agency's protective intelligence techniques."  See id. ¶ 19.  It also contains specific details about a system to be used in identifying, analyzing, and investigating threats against Secret Service protectees.  See id.  After conducting a segregability analysis of this document, the Secret Service determined that the only nonexempt material in the presentation consisted of the first page, which shows the company logo and the date and title of the presentation, and the last page, which shows the company logo and the phrase "Q&A – Next Steps."  See id.  Accepting the Secret Service's determination that only the first and last pages of Document 10 are nonexempt,[2] Document 10 differs from the other challenged documents in that

_____

[2] Given that Document 10 is a targeted presentation about Secret Service techniques falling squarely within FOIA Exemption 7(E), see 5 U.S.C. § 552(b)(7)(E), and that the Secret Service has identified nonexempt portions of the other challenged documents, the Court has no

the agency has already disclosed all of the nonexempt information in the document – the

company name, Cyveillance; the date of the presentation, January 2010; and the presentation's

title, "United States Secret Service, Cyveillance Overview."  See Mead Data, 566 F.2d at 260

(noting that "[t]he focus of the FOIA is information, not documents").  Hence, the Court is

satisfied that the agency met its disclosure obligations with respect to Document 10.

II.     Attorney's Fees and Costs

        EPIC asks for attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E), claiming that it has

"substantially prevailed" in this lawsuit, irrespective of the Court's decision on the motions for

summary judgment.  See Pl.'s Cross Mot. 14-15.  DHS contends that EPIC's request for fees and

costs is premature and that the parties should first be given an opportunity to negotiate and

resolve fee issues on their own.  See Def.'s Reply & Opp'n 8-9.  The Court agrees, and will enter

an order directing the parties to confer and attempt to reach an agreement on fee issues.  See

Local Civ. R. 54.2(a).  Although the Court is not deciding the issue at this time, it notes, in the

hope of guiding the parties' discussions, that EPIC will be entitled to some amount of fees and

costs, given the agency's release of responsive documents, the Vaughn index revisions, and the

Court's resolution of the instant motions.

**CONCLUSION**

        For the foregoing reasons, both parties' motions for summary judgment will be granted in

part and denied in part.  DHS's motion will be granted as to the segregability of Document 10 of

---

reason to question this determination.  See Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013)
(stating that agency "is entitled to a presumption that it complied with the obligation to disclose
reasonably segregable material" (internal quotation marks and alteration omitted)); Boyd v.
Criminal Div. of U.S. Dep't of Justice, 475 F.3d 381, 391 (D.C. Cir. 2007).

the Secret Service's <u>Vaughn</u> index.  EPIC's motion will be granted as to the segregability of

Documents 4, 5, 6, 12, 13, and 16; DHS must disclose all reasonably segregable, nonexempt

portions of these documents.  EPIC's request for attorney's fees and costs will be denied at this

time, and the parties will be ordered to confer on fee issues pursuant to Local Civil Rule 54.2(a).

A separate order accompanies this memorandum opinion.

_____/s/_____

John D. Bates

United States District Judge

Dated: <u>March 4, 2013</u>