## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
ELECTRONIC PRIVACY INFORMATION CENTER, )
                                                          )
                    Plaintiff,                            )
                                                          )
            v.                                            )  Case No. 1:11-cv-02261(JDB)
                                                          )
THE UNITED STATES DEPARTMENT OF              )
HOMELAND SECURITY,                                )
                                                          )
                    Defendant.                          )
_____ )

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES AND COSTS

Defendant United States Department of Homeland Security ("DHS") respectfully submits

this Opposition to Plaintiff Electronic Privacy Information Center's ("EPIC's") Motion for

Attorney Fees and Costs.

## INTRODUCTION

While we do not dispute that EPIC is entitled to some fees in proportion to its minimal

success, its request of $30,590.75 is unreasonably excessive and wholly unsupported.  First,

EPIC is entitled to fees only with respect to issues on which it prevailed.  Even if the Court were

to accept plaintiff's argument that it prevailed in part because the filing of its lawsuit allegedly

caused DHS to produce non-exempt records in response to its FOIA request, EPIC is entitled at

most only to the relatively few hours expended on the drafting and filing of the complaint.  And

even these hours must be reduced for overbilling, as demonstrated below.  EPIC is otherwise not

entitled to any fees for time spent on issues it conceded or on which it did not prevail.  Thus,

EPIC is not entitled to fees for the vast majority of the time it devoted to the parties' cross-

motions for summary judgment, on which EPIC partially prevailed only on the issue of

segregability with respect to only six out of several hundred documents which resulted in the production of meaningless boilerplate contract language.  EPIC made no attempt to exclude any hours spent on its unsuccessful claims, which caused its fee request to be vastly inflated.

EPIC furthermore over-staffed this garden-variety FOIA case with seven attorneys and often billed for several attorneys to complete the same straight-forward task, resulting in duplicative, excessive, or otherwise unnecessary billing time.  Three of its attorneys were law graduates when they performed the relevant tasks, but EPIC still billed for them as attorneys with 1-3 years experiences, resulting in inflated and inappropriate hourly rates.  EPIC's billing records are also rife with inconsistencies and inaccuracies that call into question the contemporaneousness of its records.  After the undersigned counsel questioned many entries in the billing records, EPIC changed the dates of the entries in the billing records submitted to the Court, without acknowledging the changes in its affidavits.

Finally, EPIC is not entitled to "fees-on-fees" in this case.  First and foremost, EPIC refused defendant's repeated requests to seek a 30-day extension of time to allow the parties to complete settlement negotiations.  Awarding "fees on fees" would reward a recalcitrant party and penalize defendant unfairly.   In addition, because EPIC's fee motion is substantially similar to, if not virtually identical to, other fee motions that it previously filed, it is not entitled to the fees it claims.

 Given its minimal success and the unnecessary hours billed, the Court should substantially reduce the amount of fees to no more than $1,992.50, an amount that more accurately reflects the reasonable fees in this simple FOIA case.

## **BACKGROUND**

In April, 2011, EPIC submitted a FOIA request to the Department of Homeland Security ("DHS"), seeking disclosure of documents related to the use of social-networking websites for investigative or data gathering purposes. On April 28, 2011, DHS acknowledged receipt of the FOIA request and denied EPIC's requests for expedited processing and for status of a representative of the news media. See DHS MSJ at 1-6; Dkt No. 12. DHS then tasked several of its component agencies to conduct a complete search. Id.

On January 10, 2012, DHS produced its first production of 285 pages of documents. Id. The DHS informed EPIC that it was withholding 56 pages in their entirety under FOIA exemptions 3, 4, 5, 6, 7(C), and 7(E). Id. On February 6, 2012, DHS produced its second interim response consisting of 39 pages, of which 24 pages were released in full and 15 pages were released with minor redactions pursuant to FOIA exemptions 6, 7(C), and 7(E). Id. On May 31, 2012, DHS produced 213 pages of documents, of which 56 pages were copies of pleadings relating to another FOIA case. See Declaration of Jean-Michel Voltaire ¶ 11 On July 2, 2012, DHS released fifty-five pages of records with no exemptions claimed, and, on July 9, 2012, it produced 32 additional pages of records in full without redactions, 48 pages partially redacted pursuant to FOIA exemptions (b)(4), (b)(6), (b)(7)(C) and (b)(7)(E), and informed Plaintiff that 230 pages were withheld in their entirety pursuant to FOIA exemptions (b)(4), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E). Id.

On July 31, 2012, DHS moved for summary judgment, arguing that it was entitled to judgment as a matter of law because it responded to EPIC's FOIA request by conducting an adequate search of agency records and producing all responsive documents that were not exempt from release under FOIA. See DHS MSJ at 1-23; Dkt No. 12. In its Opposition and Cross-

Motion, EPIC did not challenge the adequacy of DHS's search for documents.  Nor did it dispute

that DHS properly withheld records under Exemptions 4, 5, 6 and 7 of the Freedom of

Information Act (FOIA).  Instead, EPIC challenged the sufficiency of DHS's Vaughn Index,

requested that any non-exempt information existing in seven (out of 42)  documents withheld by

the United States Secret Service ("USSS") be segregated and released, and demanded attorney's

fees and cost.  See EPIC Opp. & MSJ, Dkt No. 17.  EPIC withdrew its Vaughn Index challenge

after DHS voluntarily revised its index to provide greater clarity with respect to a few

withholdings.

On March 4, 2013, the Court ruled that both motions were granted in part and denied in

part.  See Dkt No. 23.  The Court denied EPIC's request for attorney's fees and costs as

premature, and partially ruled in EPIC's favor on the issue of segregability with respect to six out

of seven documents challenged.  Id.  On March 22, 2013, DHS produced the non-exempt

portions of these contracts, which were boilerplate contractual language and disjointed words

that had minimal or no information content value.  Voltaire Declaration ¶ 1.

## STANDARD OF REVIEW

A plaintiff must satisfy a two-step inquiry to receive fees and costs in a FOIA action.

First, the plaintiff must show that it is eligible for an award.  To meet this standard, the plaintiff

must show that it has "substantially prevailed," which means it obtained relief through either (1)

"a judicial order, or an enforceable written agreement or consent decree;" or (2) "a voluntary or

unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5

U.S.C. § 552(a)(4)(E)(ii).  The second of these two options "essentially codifies the 'catalyst

theory'" of recovery, under which a plaintiff is eligible for fees if the "litigation substantially

caused the requested records to be released."  N.Y.C. Apparel F.Z.E. v. U.S. Customs& Border

Prot. Bureau, 563 F. Supp. 2d 217, 221 (D.D.C.2008) (internal citation omitted).  To recover

attorneys' fees under this theory, "a litigant must . . . show[] that the lawsuit was reasonably

necessary and the litigation substantially caused the requested records to be released."  Burka v.

HHS, 142 F.3d 1286, 1288 (D.C. Cir. 1998).  Although it is a "'salient factor' in the analysis,'

"the mere filing of the complaint and the subsequent release of the documents is insufficient to

establish causation."  Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984); Pub. Law Educ.

Inst. V. DOJ, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an

FOIA action and the release of documents may be taken into account in determining the

existence vel non of a causal nexus, timing, in itself or in conjunction with any other particular

factor, does not establish causation as a matter of law.").

Eligibility does not end the inquiry, however, as not all FOIA plaintiffs who are eligible

for fees and costs are entitled to them.  Church of Scientology of Cal. v. Harris, 653 F.2d 584,

590 (D.C. Cir. 1981).  Factors that traditionally guide the entitlement inquiry include (1) the

public benefit derived from the case; (2) the commercial benefit to the complainant; (3) the

nature of the complainant's interest in the records sought; and (4) whether the government's

withholding had a reasonable basis in law.  See Davy v. CIA, 550 F. 3d 1155, 1159 (D.C. Cir.

2008).  Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the

sound discretion of the district court."  Church of Scientology, 653 F.2d at 590.

If the Court finds that EPIC is entitled to attorneys' fees, it must determine a reasonable

amount of fees, an appropriate starting point is typically the lodestar, a reasonable number of

hours multiplied by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433

(1982).  Fees for unsuccessful claims are not awarded.  See Judicial Watch v. U.S. Dep't of

Commerce, 470 F.3d 363, 369 (D.C. Cir. 2006); Nat'l Sec. Archive v. U.S. Dep't of Defense,

530 F. Supp. 2d 198, 204-205 (D.D.C. 2008).  Moreover, as a decision to award fees is

discretionary, a court "may deny in its entirety a request for an 'outrageously unreasonable'

amount, lest claimants feel free to make 'unreasonable demands, knowing that the only

unfavorable consequence of such misconduct would be reduction of their fee to what they should

have asked for in the first place.'" Envtl. Defense Fund, Inc. v. Reilly, 1 F.3d 1254, 1258 (D.C.

Cir. 1993) (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir.1980)).  If overbilling is

less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding

a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from

submitting an excessive request." Id. (citing Farris v. Cox, 508 F. Supp. 222, 227 (N.D. Cal.

1981)).

## ARGUMENT

### I.     THE $30,590 SOUGHT BY EPIC AS ATTORNEY'S FEES IS UNREASONABLE AND SHOULD BE DENIED.

It is the burden of the fee applicant to "establish[] entitlement to an award and

document[] the appropriate hours expended and hourly rates," exercise "billing judgment" with

respect to hours worked, and "maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims."  Hensley, 461 U.S. at 437 & n.12.  EPIC does not

satisfy that burden here and its charges for attorney time must be reduced accordingly.

#### a.  EPIC Is Entitled Only to Fees For Issues on Which It Prevailed.

Even if the Court were to accept EPIC's theory that its lawsuit was the catalyst for the

release of non-exempt documents, EPIC would be entitled only to the limited hours expended to

achieve the voluntary release of these documents prior to summary judgment.  In addressing

attorney's fees in FOIA litigations, "a number of … courts have divided the FOIA proceedings

into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive

all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant." Allen v. Department of Defense, 713 F.Supp 7, 12 (D.D. 1989). This Court should therefore bifurcate EPIC's fee request and award some fees only for reasonable hours expended during the first phase, until DHS ultimately made its final production of non-exempt records on July 9, 2012.

According to EPIC's billing records, it spent 22.5 hours ($5,618.75) during the first phase of this case, i.e., from December 16, 2011 through July 9, 2012. These hours were devoted to drafting and filing the complaint, reviewing documents, filing scheduling proposals and discussing this case internally. Therefore, EPIC's fee award should be limited to the reasonable hours expended to achieve the release of non-exempt documents. Allen, 713 F.Supp. at 13. As explained later, any award with regards to these 22.5 hours should be reduced for overbilling. See supra at 12-21

EPIC, however, cannot demonstrate that it "substantially prevailed" during the second phase in this case to be eligible for attorneys' fee for the vast majority of its billings, totalling approximately 75 hours. These hours were devoted to the parties' summary judgment motions, on which EPIC partially prevailed with respect only to six out of several hundred documents processed. Its partial victory, however, did not result in the disclosure of documents that were beneficial to the general public or that added to any information that citizens could use in making important political decisions. Instead, EPIC's partial success on segregability resulted in the production of meaningless boilerplate contract language and disjointed words that had minimal importance when compared to EPIC's overall FOIA request. EPIC does not even argue that these standardized contractual texts were even disseminated to the media or public, or added anything to the body of knowledge about the government's social media monitoring activities.

All of the references to news articles cited in EPIC's brief occurred prior to the release of the redacted contracts.   Therefore, not only is EPIC not a "prevailing party" on that issue, it cannot demonstrate any "public benefit" resulting from this release that would make it entitled to attorneys' fees.  See Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (In determining whether a FOIA action resulted in a "public benefit," the Court asks whether Plaintiffs' victory is '"likely to add to the fund of information that citizens may use in making vital political choices."); see also Hersh & Hersh v. U.S. Dep't of Health & Human Servs., No.C06-4234, 2008 WL2725497, at 2 (N.D. Cal. July 10, 2008) (holding a plaintiff was ineligible for fees where, though the Court's order had led the disclosure of 18 pages of documents, "the nature and quality of the information that plaintiff received . . . is itself insubstantial particularly when compared to the type of information that was generally sought by the plaintiff.").

EPIC is furthermore not a "prevailing party" with respect to its challenge of the DHS Vaughn Index.  The D.C. Circuit has made clear that even "an order compelling the production of a Vaughn Index, without more, is not enough to make a plaintiff a 'prevailing party' sufficient to support a claim for attorney's fees." Campaign for Responsible Transplantation v. FDA, 511 F.3d 187, 196 (D.C. Circ. 2007).  In that case, the D.C. Circuit upheld the denial of attorney's fees for a FOIA plaintiff, even though the lower court found the agency's Vaughn Index to be insufficient and ordered it to submit an adequate one.  Id.  The D.C. Circuit explained that "[t]he principal purpose of a Vaughn index is to facilitate the litigation process.  A Vaughn index, without more, does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim, so it does not change the legal relationship between the plaintiff and the defendant."  Id. (citing Davis v. DOJ, 460 F.3d 92, 105-06 (D.C. Cir. 1992)).

Unlike the Vaughn Index in <u>Campaign for Responsible Transplantation</u>, the Vaughn Index in this case was never found to be insufficient and DHS was never ordered to submit another Vaughn.  DHS furthermore did not release any documents as a result of EPIC's challenge of the Vaughn.  Rather, DHS took it upon itself to revise its Vaughn to make it more readable and provide additional details about a few withholdings.  EPIC, as a result, cannot and does not argue that it obtained a judicial relief on that issue to make it eligible for attorney fees. The revised index simply preserved the *status quo* and did not alter the legal relationship between the parties.  Therefore, the Court should eliminate all hours EPIC spent briefing this issue.

> ### b. EPIC's Fee Request Is Unreasonable Because It Did Not Exclude Any Hours Spent On Its Unsuccessful Issues.

EPIC is not entitled to attorney fees for "time expended on issues on which [it] did not ultimately prevail."  <u>National Ass'n of Concerned Vets. v. Department of Defense</u>,  675 F.2d 1319, 1327 (D.C. Cir. 1982).   The Supreme Court made it clear that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." <u>Farrar v. Hobby</u>, 560 U.S. 103, 114(1992).  When setting a reasonable attorney fee award, "work on an unsuccessful claim cannot be deemed expended in pursuit of the ultimate result achieved . . . and therefore no fee may be awarded for services on the unsuccessful claim." <u>Hensley</u>, 461 U.S. at 435.  The D.C. Circuit applies <u>Hensley</u> "relatedness" analysis to issues as to claims. <u>Sierra Club v. EPA</u>, 769 F.2d 796, 801-02 (D.C. Cir. 1985); <u>Kennecott Corp. v. EPA</u>, 804 F.2d 763, 765 (D.C. Cir. 1986).  "To those issues upon which the party has prevailed, he is entitled to fees.  To those issues upon which he did not prevail, he is not so entitled. " <u>Hawaii Longline Ass'n v. Natl Marine Fisheries Service</u>, 2004 WL 2239483, at 6 (D.D.C., September 27, 2004) at 6 <u>citing Hensley</u>, 461 U.S. at 436; <u>Lake Pilots Ass'n v. U.S. Coast Guard</u>, 310 F. Supp.2d 333, 345 (D.

D.C. 2004).   Nor could a plaintiff recover attorney's fees for unnecessary motions or other

filings.  Weisberg, 745 F.2d at 1499.  Therefore, counsel seeking attorney's fees must subtract

from their fee request hours spent litigating issues the party ultimately conceded or on which it

did not prevail.  Id.; Stewart v. Gates, 987 F.2d 1450, 1452 (9th Cir. 1993); Gates v. Deukmejian,

987 F.2d 1392, 1397 (9th Cir. 1993).

      Despite these binding precedents, EPIC has failed to eliminate hours spent on issues it

conceded or did not prevail.  Instead, EPIC seeks recompense for all hours spent in this

litigation, even though it prevailed only partially on the issue of segregability with respect to six

out of several hundred documents processed.  It also requested fees for its opposition to DHS's

Motion for Extension of Time, even though it lost on that motion.  See Minute Court Order on

10/4/12.  Nor did it eliminate any hours spent on its initial request for attorney's fees, even

though the Court denied that claim as premature.  "[A] plaintiff who achieved only "limited

success" is not entitled to a full attorney's fee.  Rather, "[w]here the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained."  Hensley, 461 U.S. at 440; Nat'l Sec. Archive v. DOD, 530 F.

Supp. 2d 198, 205 (D.D.C. 2008) ("Awarding NSA its entire fee, and thus compensating it at

least in part for time spent on a losing claim, would be an abuse of discretion under Hensley.");

See  Read v. FAA, 252 F.Supp.2d 1108, 1113 (W.D. Wash. 2003) (reducing attorney's fees for

partially successful motions by 75 percent).

      Where, as here, a party obtained only a minimal success, courts go through that party's

attorney's billing records and eliminate hours devoted to unsuccessful issues.  That, however, is

not possible here because EPIC's billing entries largely fail to specify what claims its attorneys

were working on at a given time, despite their obligation to do so.  See Schwarz v. Secretary of

HHS, 73 F.3d 895, 906 (9th Cir. 1995) ("[A]n attorney 'should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.'") (quoting Hensley, 461 U.S. at 437).  EPIC's failure to keep precise records is an additional ground for reducing its fees for these filings.  Nat'l Sec. Archive v. Dep't of Defense, 530 F. Supp.2d 198, 209 (D.D.C. 2008) (finding, in FOIA case, "that [plaintiff's] inability to segregate the time spent on the claim it won from the time spent on the claim it lost militates against the award of fees it seeks.").

Because EPIC's counsel have not allocated their time between issues, the court may use the number of pages of argument directed at the losing claim as a proxy for allocating attorney's fees.  Turner v. D.C. Bd. of Elections & Ethics, 354 F.3d 890, 894, 899 (D.C. Cir. 2004). In its summary judgment briefs to this Court, EPIC allocated approximately 72% of its arguments exclusively to the claims that it either lost or conceded.  Specifically, in its argument sections, EPIC devoted 17 pages to attorney's fees issue (which was denied as premature), 4 pages to its challenge of the DHS Vaughn Index (which was later withdrawn), and 8 pages to segregability (on which it prevailed only partially).  See Pl. Cross-Motion for SJ, and Reply, Dkt Nos. 17 & 22.

Therefore, if the Court were to find EPIC to be a prevailing party on the issue of segregability for the purpose of obtaining attorneys' fees, the Court should reduce the 75 hours spent on the parties' cross-motions for summary judgment by a minimum of 72%.  The remaining amount that represents the 28% victory on its cross-motion should be reduced further for overbillings (i.e., duplication, excessiveness, inflated hourly rates, and improper documentation).  Still, whatever left of the 28% after reduction for overbillings should further be reduced to reflect EPIC's partial victory, as it obtained only 6 out of 7 documents challenged. As this Court explained in Trout v. Winter, 464 F. Supp.2d 25 (D.D.C. 2006), "While the district

court clearly has [discretion] in calculating an appropriate fee, our court of appeals has held that under Hensley 'when a party has received no favorable results in a particular aspect of a litigation, that party may receive no fee for work on the part of the case.'" Anthony v. Sullivan, 982 F.2d at 589, see, e.g., Thompson 664 F. Supp.2d at 583 (reducing lodestar fee by 75% where plaintiff prevailed on only one of four discrimination claims); Noble v. Herrington, 732 F. Supp. 114, 117-18 (D.D.C. 1989) (reducing lodestar fee by 80% to account for plaintiff's extremely limited overall victory).

      c.  **Much of EPIC's Billing Entries Are Insufficiently Documented.**

Applications for awards of attorney fees must include "contemporaneous time records of hours worked and rates claimed, plus a detail description of the subject matter of the work with supporting documents, if any." In re Donovan, 877 F.2d 982, 994 (D.C. Cir. 1998). "Casual after-the-fact estimates of time expended" are "insufficient." National Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982); accord In re North (Watson Fee Appl'n), 32 F.3d 607, 608 (D.C. Cir. 1994). Where, as here, the amount of the proposed award is to be paid from federal funds, documentation submitted in support of the award '"must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that [the] hours [for which compensation is sought] were actually and reasonably expended.'" Donovan, 877 F.2d at 994 (quoting United Slate Title & Composition v. G&M Roofing, 723 F.2d 495, 502 n.2 (6th Cir. 1984)).

A substantial portion of EPIC's billing entries, totaling approximately 25.5 hours, contain descriptions that are so cryptic as to be meaningless and thus should be excluded. These entries include "file," "conference," "research,", "edit," "draft," "review," and "attempt to contact opposing counsel." These vague billing entries leave the Court guessing whether that time was

spent on claims that were successful or unsuccessful, and whether the amount of time spent on a given issue was reasonable.   See H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991). Where, as here, the billing entries are too vague to allow the Court to assess their reasonableness, they must be weeded out.   In re Donovan, 877 F.2d at 994 (billing entries referring to "legal issues," "conference re all aspects," "call re status," and teleconferences . . ." too vague to permit compensation).

In addition, EPIC's billing records are rife with inconsistencies and inaccuracies that call into question their contemporaneousness.  For example, in the billing records submitted to Defendant on March 26, 2013 for settlement, EPIC counsel claimed to have spent 3.7 hours on March 23, 2012, purportedly drafting and reviewing scheduling proposal, even though the joint status report about the briefing schedule was filed two days earlier, on March 21, 2012. Compare EPIC's Exhibit #2 at 1-2 with DHS Exhibit # 1 at 1-2; Dkt No. 6.  On April 8, 2013, in responding to EPIC's settlement request, the undersigned counsel questioned the blatant inaccuracies in several billing entries because they were contradicted by objective data.  See Voltaire Decl. at 7.  When filing this fee motion, however, EPIC casually corrected these entries without acknowledging the changes in its affidavits.  Surprisingly, EPIC claims that its "request for attorneys' fees is supported by contemporaneously-recorded time records."  See EPIC Fee Motion at 15. Obviously, EPIC's statement is factually incorrect.

Another example of inaccuracies is when EPIC claims to have spent 2.3 hours in preparation of filing documents with its complaint, even though there was no attachment to the complaint.  It further claims to have spent 1.75 hours reviewing, discussing, holding conference, and editing its opposition to DHS's motion for extension of time, but its billing records contain no time entry for actually drafting the 6-page opposition with multiple case citations and legal

analysis.  These inaccuracies, inconsistencies, and omissions raise serious questions about the

reliability of EPIC's bill in general.  "Casual after-the-fact estimates of time expended" are

"insufficient" and are not allowed.  <u>National Ass'n of Concerned Veterans</u>, 675 F.2d at 1327.

     d.  **EPIC Overstaffed this Simple Case, and Improperly Sought Fee For Unnecessary and Duplicative Work.**

Without question, EPIC seeks compensation for patently unnecessary and duplicative

efforts, billing for work performed by 7 attorneys in this garden-variety FOIA case where the

government is represented by a <u>single</u> attorney.  Courts should examine with skepticism claims

that several lawyers were needed to perform a task, and should deny compensation for such

needless duplication.  <u>Trimper v. City of </u>Norfolk, 58 F.3d 68, 76-77 (4th Cir. 1995) (district court

should scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.);  <u>Lipsett

v. Blanco</u>, 975 F.2d 934, 938 (1st Cir.1992) ("A trial court should ordinarily greet a claim that

several lawyers were required to perform a single set of tasks with healthy skepticism.");

<u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980) (holding "[if] three attorneys are

present at a hearing when one would suffice, compensation should be denied for the excess

time.").

<u>Hensley</u> also requires the district court to exclude from the calculation, and a prevailing

party to exclude from its fee request, hours that are "excessive, redundant or otherwise

unnecessary."  461 U.S. at 434; <u>accord</u> <u>Oklahoma Aerotronics, Inc. v. United States</u>, 943 F.2d

1344, 1347 (D.C. Cir. 1991) (courts must disallow "excessive, redundant, or otherwise

unnecessary" hours).  "Similarly, if the same task is performed by more than one lawyer,

multiple compensation should be denied.  The more lawyers representing a side of the litigation,

the greater the likelihood will be for duplication of services."  <u>Ramos v. Lamn</u>, 713 F.2d 546,

554 (10th Cir. 1983).  Some courts view this requirement as a matter of billing judgment.  <u>See</u>

e.g. Brown v. Bolger, 102 F.R.D. 849, 862-63 (D.D.C. 1984).  A close examination of EPIC's billing record reveals that its fee request cannot be justified based on the nature of the items billed and the number of hours billed to them.

The excess in EPIC's billing cannot be overstated.  One of the most egregious, unnecessary, and duplicative billing entries is a charge to the government of five hours of fees for a one-hour conference.  For example, on September 17, 2012, five attorneys attended a "conference" that lasted only one hour.  Not only has EPIC failed to state the activities addressed in this "conference" to determine its reasonableness, but also it charged the government one hour for each attendee, totaling five billing hours.  Another classic example of this kind of excess -- which is generally trimmed in the exercise of billing judgment, but was not here—is the number of hours claimed for internal attorney meetings.  EPIC billed the government approximately 12.1 hours of internal conferences among attorneys and staff—more than 11 percent of the total hours billed for the entire litigation.  Some of these hours were spent on internal discussions relating to an attorney's hospitalization.  See DHS Exhibit #1 at 4.  EPIC's counsel also charged $24 to $48 for each email she sent to opposing counsel regardless of its substance and for each phone call placed regardless of whether opposing counsel actually answered the call.  These charges are improper and should be denied.

Attorneys ordinarily do not charge their clients fees for time spent on internal meetings because they are often not the most productive use of time and have little relevance to resolving the case.  Indeed, many of the hours devoted to meetings appear to have been merely for the attorneys to update each other on the status of the case or routine matters relating to the case. Additionally, internal meetings are often disproportionately expensive in relation to their benefit, in that fees are charged for multiple attorneys.  Even if some amount of conferences would be

billable, the extent of conferences, phone calls, and the like billed here is clearly excessive.  See

Shephard v. Dorsa, No. 95-8748, 1998 WL 1799018, at 2 (C.D. Cal. July 2, 1998) (reducing

hours by a flat percentage to account for excessive conferencing).

      Another illustration of EPIC's excessive billing is a charge of 8.5 hours ($2,040) for a 9-

page boilerplate complaint for this simple, straightforward FOIA case.  The complaint is

substantially identical in many aspects with other complaints EPIC has filed in other FOIA cases.

Compare EPIC Compl. Dkt No. 1 with DHS Exhibit #2 (EPIC complaint in EPIC v. DHS,

No.1:09cv02084 (RMU)).  Most of the factual allegations in this complaint were lifted from the

FOIA request.  See DHS Exhibit #3(EPIC FOIA Request).  An attorney "is charged with

utilizing 'billing judgment' when charging for his services and should not receive a windfall in

fees merely because he asks for them."  MacDougal v. Catalyst Nightclub, 58 F. Supp. 2d 1101,

1106 (N.D. Cal. 1999).  Plaintiff's counsels cannot claim expertise in this area, thus justifying a

substantial hourly rate, and at the same time obtain compensation for a large amount of attorney

time to draft a simple, boilerplate complaint.

    **e.**  **EPIC Charged Improper Hourly Rates Under the Laffey Matrix for David R.**
        **Brody, Julia Horwitz, and  Jeramie D. Scott Prior to Their  Bar Admissions.**

      EPIC has claimed fees for 37 hours of time spent by David R. Brody, Julia Horwitz, and

Jeramie D. Scott, categorizing them as attorneys with 1-3 years experience.  See EPIC's Exhibit

#1. These attorneys, however, were not yet admitted to any bar at the time they performed the

works for which they seek recompense.  Therefore, their hourly rates should be reduced to the

Laffey Matrix lower rate for law clerks or paralegals.[1]  See EPIC v. DHS, 811 F.Supp.2d 216, 238

(D.C.C., 2011) (citing Blackman v. District of Columbia, 677 F.Supp.2d 169, 175 (D.D.C.2010))

("B]ecause the plaintiff does not refute that one of its attorneys, Ms. Ginger McCall, conducted

---

[1] The fees for these attorneys should further be reduced or excluded as duplicative and excessive, and should be
reduced further because they were mostly devoted to unsuccessful claims.

work on this litigation prior to her admittance to the bar, the court applies the "paralegal/clerk" *Laffey* rate to this time.")   For example, in his affidavit, Mr. Brody states that he graduated from law school in 2012 and was sworn as member of the Bar of California on January 27, 2013. Brody Aff. ¶¶ 4-5.  However, Mr. Brody performed the relevant work on September 17, 18, 19, 20, 2012.  Because Mr. Brody had not yet been admitted to practice law, it is unreasonable for EPIC to seek rates for him that would apply to a practicing attorney.  Rather, Mr. Brody's time prior to January 27, 2013 should be billed at the lower rate applicable to law clerks.[2]

The same lower rate should also be applied to Ms. Julia Horwitz because she was not admitted to any bar at the time she performed the work.  According to Ms. Horwitz's affidavit, she is a 2012 graduate and a member in good standing of the Bar of Maryland.   Horwitz Aff. ¶¶ 4-5.  Ms. Horwitz does not state in her affidavit the date on which she was admitted to practice law.  According to publicly available Maryland Bar records, Ms. Horwitz was admitted to practice on December 12, 2012.   Ms. Horwitz performed the relevant work for which she seeks compensation on September 17, 18, 19, 20, 21, 2012.  Because Ms. Horwitz had not yet been admitted to practice law, it is unreasonable for EPIC to seek rates for her that would apply to a practicing attorney.  Therefore, Ms. Horwitz's time prior to December 12, 2012 should be billed as a law clerk.

Ms. Jeramie D. Scott's hourly rate should be reduced to rate applicable to law clerks as well.   In her affidavit, Ms.Scott states that she is a 2012 graduate and passed the New York State Bar Exam.  Scott Aff. ¶¶ 4-5.  Ms. Scott does not state in her affidavit whether she is admitted to practice law.  According to publicly available New York Bar records, as of today, Ms. Scott is not a member of the New York Bar.  Because there is no record that Ms. Scott has been admitted

---

[2] The Laffey Matrix rate for law clerks and paralegals is $145/hour as opposed to $245/hour billed by EPIC.  <u>See</u> EPIC Exhibit #6.

to practice law, it is unreasonable for EPIC to seek rates for her that would apply to a practicing attorney.  Therefore, Ms. Scott's time should be billed at an hourly rate applicable to law clerks or paralegals.

## II.     EPIC IS NOT ENTITLED TO "FEES ON FEES."

EPIC should not receive "fees on fees" in this case because it filed its fee motion without responding to defendant's good-faith efforts to negotiate and for refusing to seek a short extension of time to allow the parties the opportunity to reach an agreement on the attorneys' fees issue.  Although the Court issued its decision on March 4, 2013, EPIC did not submit its fees request to Defendant until March 26, 2013.  Voltaire Declaration, at ¶ 2.  Defendant informed EPIC that it was seeking authorization to make a counter-offer by April 8, 2013, and requested that EPIC seek a 30-day extension of time to enable the parties to reach a settlement.  Defendant's request for an extension was reasonable in light of EPIC's delay in providing its fees request, the poor quality of EPIC's billing records, and the complexities involved in obtaining approvals for attorney fees where the litigation involved multiple agency components and required multiple levels of internal agency approvals.   EPIC refused this reasonable request and chose instead to email its draft fee motion to Defendant before Defendant even had a reasonable opportunity to make its first settlement offer.  Id. at 6.  Notwithstanding this fact, defendant made two settlement offers before the April 10th deadline and reiterated its request that EPIC seek the short extension of time.  Again, EPIC refused this reasonable request and chose instead to file this motion.   As a result of this failure to negotiate, the parties were denied the opportunity to resolve the fee issues between themselves -- as happens in the vast majority of these cases -- without burdening the court with further litigation.  Apparently, EPIC determined that the filing of its fee petition would not result in any extra burden or cost to itself as it was

able simply to copy that portion of its summary judgment brief in which it had previously argued before the Court that it was entitled to fees.  Plaintiff's conduct, however, vexatiously imposed unnecessary burdens on defendant and the Court.  The Court has discretion to deny or limit a fee request under such circumstances, see Moriarty v. Svec, 233 F.3d 955, 967 (7ᵗʰ Cir. 2000), and should do so here.  Awarding EPIC "fees on fees" would reward its recalcitrance and penalize defendant (and federal taxpayers) unfairly, especially at this time when executive agencies are subject to significant budget constraints as a result of sequestration.

Alternatively, even if the Court grants EPIC "fees on fees," such an award should be reduced significantly.  The 8.4 hours spent on conferences and drafting this fee motion is unreasonable because this motion is substantially similar, if not identical, to EPIC's previously-filed motions.  Moreover, to the extent that the Court agrees with defendant that many or most of EPIC's fee demands are unwarranted or unsupported, the amount of "fees on fees" should be reduced accordingly.  See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 n. 10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); Nat'l Veterans Legal Svcs. Prog v. Department of Veteran Affairs. 1999 WL 33740260, at *5-*6 (D.D.C. 1998) (citing Jean, finding that an award of "fees on fees" should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court).  Accordingly, if EPIC receives an award of "fees on fees" at all, that amount should be substantially reduced to reflect any reduction to plaintiff's underlying fee request as may be ordered by the Court.

**Proposed fee and cost awards.**

Because defendant is not disputing that EPIC is entitled to some fees for works done during the first phase, until the time DHS made its final production of non-exempt documents on

July 9, 2012, and for the reasons set forth above, defendant proposes the following amounts as reasonable:

**Phase I:**

**1.**    **Initial Complaint:**  EPIC billed 8.5 hours, which should be reduced to 5 hours by excluding 1.2 hour "file" and 2.3 hours "prepare filing documents."

> Requested amount for the complaint: $2,040
> Reduction:                                              $840
> **Remaining total:**                               **$1,200**

**2.**    **Document Review:**  EPIC billed 7.9 hours simply to review 619 pages of documents, 56 pages of which were copies of pleadings in another FOIA case.   EPIC should not receive any fees for reviewing documents produced in response to its FOIA request.  See CREW v. DOJ, 825 F. Supp.2d 226, 231 (D.D. C. 2011).  In any event, these hours are excessive and improper.   If the Court were to award any fees, **they should not exceed $500**.

 **3.**    **Other Tasks up to July 9, 2012:**  EPIC billed 5.95 hours on internal conferences, communications with opposing counsel, and scheduling proposal/joint status report.  Many of these hours are improper, and the Court should **allow only 2 hours** for the joint status report.

> Requested amount:        $ 1,551.50
> Reduction                       $ 1,061.5
> **Remaining total:**          **$490 (2hours x $245/hour)**
>
> Merits on Phase I:   $2,190
> Fees on fees:          $0
> Costs:                    $350
> Total:                     $2540

**Phase II:**

 1.    **Partial success on segregability:**  No fees should be allowed because Plaintiff's minimal victory regarding segregability does not justify a fee award.

Moreover, if the Court determines EPIC's initial fee request was "outrageously unreasonable," it retains discretion to award EPIC no fees, or reduced fees, in lieu of these amounts in order to discourage fee petitioners from submitting an excessive request.  See Envtl. Defense Fund, 1 F.3d at 1258.  This clearly appears to be a case in which the plaintiff made "'unreasonable demands, [believing] that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'"  Id.  At the very least, given the excessive nature of EPIC's request and because it only achieved minimal success, a further reduction of 25 percent in the above fees may be warranted.  This would put EPIC's final award at $1,642.50 in fees, plus $350 in costs, for a total of $1,992.50.

## CONCLUSION

Because of EPIC's minimal success in this case and of the excessive and duplicate billing hours, Defendant requests that EPIC's fees be reduced to a total of $1,992.50, or alternatively, to no more than $2,540.

Date: April 29, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

JOHN R. TYLER
Assistant Branch Director
Federal Programs Branch

/s/ Jean-Michel Voltaire
JEAN-MICHEL VOLTAIRE (NY Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Tel.: 202-616-8211; Fax: 202-616-8460