**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER ) ) ) ) | |
| Plaintiff, ) | |
| v. ) | No. 1:11-02261 (JDB) |
| ) | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY ) ) ) | |
| Defendant. ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
AND COSTS**

Plaintiff Electronic Privacy Information Center ("EPIC") moved the Court for an

award of attorneys' fees and costs against Defendant Department of Homeland Security

("DHS") in this Freedom of Information Act ("FOIA") action. Dkt. No. 25. DHS filed a

memorandum in opposition. Dkt. No. 26 ("DHS Opp."). EPIC now replies in support of

its motion for attorneys' fees and costs. For the reasons stated below, EPIC's motion

should be granted. Furthermore, EPIC asks the Court to award EPIC its attorneys' fees

incurred in the preparation of this reply, Exhibit 1, and all other filings subsequent to the

filing of DHS' memorandum in opposition.

**INTRODUCTION**

First, the Court has already concluded that EPIC is eligible for and entitled to fees.

In the Court's March 4, 2013 Memorandum & Opinion, Dkt. No. 23, the Court stated,

"Although the Court is not deciding the issue at this time, it notes, in the hope of guiding

the parties' discussions, that EPIC will be entitled to some amount of fees and costs,

given the agency's release of responsive documents, the Vaughn index revisions, and the

Court's resolution of the instant motions." Second, as set forth below, EPIC should be

compensated for all work that EPIC has billed for because none of the matters the DHS is

challenging were severable for the purpose of assessing attorneys fees. And EPIC

prevailed in all matters that it is billing for. Third, EPIC's fees request is reasonable,

supported by comprehensive and contemporaneously recorded billing records, and

sufficient under D.C. Circuit precedent. Fourth, EPIC is entitled to fees on fees, including

the fees included in attached Exhibit 1, which detail the time spent on this reply motion.

I.      **EPIC Is Entitled To $30,590 In Attorney's Fees Plus Fees for the Time Spent
        on This Reply Because It Satisfied The Requirements of the "Substantially
        Prevailed" Test**

        A.      **DHS' Analysis of EPIC's Entitlement and Eligibility for Attorney's Fees
                Relies on A Faulty Conflation of Legal Tests**

        As a general matter, DHS' analysis of EPIC's eligibility and entitlement to fees

fails because it conflates the two separate tests that the D.C. Circuit uses in order to

determine attorney's fees. DHS states, "In determining whether a FOIA action resulted in

a 'public benefit,' the Court asks whether Plaintiff's victory is 'likely to add to the fund

of information that citizens may use in making vital political choices'" DHS Opp. at 8

(citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)). However, this assertion

confuses two different types of fees analysis. In order to be eligible, a plaintiff must

"substantially prevail" in its FOIA litigation, and, separately, demonstrate "entitlement"

to the compensation. The test for "substantially prevailing" consists of a two-part test.

*Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1984). The separate test

for "entitlement" consists of a four-factor balancing test, one of whose factors inquires

whether the public derived benefit from the case as a whole. *Fenster v. Brown*, 617 F.2d

740, 742 (D.C. Cir. 1979). The analysis applied by DHS, however, inquires whether one

factor of a four-part balancing test is satisfied according to the standard laid out in

another, separate test. Simply as a matter of legal interpretation, a plaintiff would not

need to "substantially prevail" with respect to the "public benefit" prong, since that

analysis confuses aspects of two distinct tests.

### 1. DHS Mischaracterizes and Misinterprets the "Substantially Prevailed" Test

In order for a plaintiff to demonstrate that it has "substantially prevailed" in FOIA

litigation it must satisfy two requirements. First, it must show that filing the action could

reasonably have been regarded as necessary to obtain the information sought. *Vermont*

*Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976); *Cox v.*

*United States Dep't of Justice,* 601 F.2d 1, 10 (D.C. Cir. 1979). Second, it must show that

filing the action had a substantial causative effect on the delivery of the information. *Id* at

12. The question of "substantially prevailing" is therefore a test that asks about the

effectiveness of the lawsuit as a means for causing the distribution of information.

Referring to one of EPIC's claims, DHS writes, "Therefore, not only is EPIC not a

'prevailing party' on that issue, it cannot demonstrate any "public benefit" resulting from

this release that would make it entitled to attorney's fees." DHS Opp. at 8. However, a

plaintiff does not need to prove that it "substantially prevailed" at each stage of the

litigation; indeed, this would be impossible for a plaintiff to prove, since the language of

the "substantially prevail" test refers explicitly to "the filing of the action." *Weisberg v.*

*DOJ*, 745 F. 2d 1476, 1496 (D.C. Cir. 1984). DHS argues that EPIC is not a "prevailing

party" as to certain filings. However, this is a misapplication of the law. "Substantially

prevailing" does not reflect the success of individual stages of the litigation, but rather the overall impact that the litigation has on effectuating the purpose of the FOIA.

DHS attempts to frame this analysis against the backdrop of a 1989 D.C. District Court case called *Allen v. DOD*, 713 F.Supp 7, 12 (D.D.C. 1989). DHS cites *Allen*: "a number of … courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant." DHS Opp. at 7. However, this proposition was taken from the discussion in *Allen* not about attorney's fees generally, but about the award of interim fees. DHS mischaracterizes its citation; the first part of the sentence cited actually reads, "In approaching a request for interim attorney's fees, a number of [district] courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant." *Allen*, 713 F.Supp at 12. Furthermore, in *Allen*, the court actually decided that the plaintiff *was* entitled to interim attorney's fees, stating "this court has no trouble concluding that but for the plaintiff's success in this suit, no documents would have been disclosed in this case. The court can thus find no obstacle to the plaintiff's recovery of an interim award of attorney's fees in this case." *Id.* at 12-13. DHS not only misinterprets the applicability of the *dicta* in *Allen*, but also sidesteps the court's holding which supports the award to EPIC.

### 2.  DHS Misapplies the Four-Pronged Entitlement Test

DHS relies upon the 1995 D.C. Circuit decision *Cotton v. Heyman* to support the proposition that EPIC cannot demonstrate a "public benefit" resulting from the release of the requested documents. DHS Opp. at 8. This analysis fails not only because it misstates the appropriate test to determine a FOIA plaintiff's entitlement to fees, but also because it misapplies that test.  In *Fenster v. Brown*, the D.C. Circuit set out the factors to be considered when deciding whether a FOIA requester is entitled to attorney's fees. These factors are "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." 617 F.2d at 742. These four factors should be considered together and balanced against each other. *Tax Analysts v. United States Dep't of Justice*, 296 U.S. App. D.C. 130, 965 F.2d 1092, 1093 (D.C. Cir. 1992). Furthermore, they are not necessarily an exclusive list of factors that the courts may consider in the D.C. Circuit. *Blazy v. Tenet*, 194 F.3d 90, 96 (D.C. Cir. 1999). Even in *Cotton*, the case upon which DHS bases its analysis, and the case that *Cotton* relies upon, *Blue v. BOP*, 570 F.2d 529, 533 (5th Cir. 1978), the appellate courts determined that the lower court gave too much weight to the "public benefit" prong of the four-part balancing test to determine whether an agency is entitled to attorney's fees. In *Blue*, the 5th Circuit noted, "But the [lower] court inexplicably determined that 'criterions 2, 3 and 4 are not material in this case.' In view of the legislative history of the act, it is clear that all four criteria are to be weighed as guides to the court's discretion in FOIA attorneys' fees awards." *Id.* at 534. Similarly, in *Cotton*, the D.C. Circuit noted, "Regarding these two criteria [the second and third prongs], the district court simply asserted plaintiff did not receive a direct commercial

benefit from the disclosure of the documents. In addition, the district court did not even attempt to analyze the fourth prong of the attorneys' fees test: the reasonableness of the government's position." *Cotton,* 63 F.3d at 1120.

Like the defendants in *Blue* and *Cotton*, DHS ignores the rest of the balancing test in its analysis of EPIC's entitlement to fees. It erroneously applies a "substantially prevailed" standard to only one of the suggested four factors, and concludes that this combination of tests weighs conclusively against a fee award for EPIC.

### B. EPIC "Substantially Prevailed" and Is Entitled to Attorney's Fees

DHS asserts that because EPIC did not succeed on every motion it filed, the hours spent working on those motions are severable, and should be eliminated from the fees calculus. DHS Opp. at 10. However, in FOIA litigation, plaintiffs are not required to demonstrate that each litigation activity undertaken led directly to an agency disclosure. In *Weisberg v. DOJ*, 745 F. 2d 1476, 1496 (D.C. Cir. 1984), the court held that a plaintiff "must show that the prosecution of the *action* could reasonably be regarded as necessary to obtain the information … and that a causal nexus exists between that *action* and the agency's surrender of that information" (emphasis added). In this case, there is no question that EPIC's lawsuit (the "action") caused the agency's surrender of records.

EPIC has only claimed fees that are reasonably compensable under FOIA. EPIC's request for compensation regarding its summary judgment motions is reasonable. These claims are not segregable from the larger litigation, in which EPIC has substantially prevailed. In its opposition, DHS misinterprets precedent. The agency cites *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) for the proposition that "work on an unsuccessful claim cannot be deemed expended in pursuit of the ultimate result achieved… and

therefore no fee may be awarded for services on the unsuccessful claim." DHS Opp. at 9.

However, this was only the first part of the Supreme Court's bifurcated finding in that

case. In full, the Court stated, "Where the plaintiff has failed to prevail on a claim that is

distinct in all respects from his successful claims, the hours spent on the unsuccessful

claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit

consists of related claims, a plaintiff who has won substantial relief should not have his

attorney's fee reduced simply because the district court did not adopt each contention

raised." *Hensley*, 461 U.S. at 440.

> **1.      EPIC's Claims Are Not "Distinct in All Respects" and Are
> Therefore Not Severable For the Purposes of Assessing Attorneys'
> Fees**

Theoretically, it is possible for a plaintiff to substantially prevail as to one matter

and not prevail as to another, severable matter in complex litigation. As the Court has

stated, "The reasonableness of a fee request must be evaluated in light of the results

obtained." *Riverside v. Rivera*, 477 U.S. 561, 572 (1986). Such fees and costs should not

be awarded for excessive, redundant, or otherwise unnecessary work. Nor should fees be

granted for hours spent on unsuccessful claims that are distinct in all respects from

successful claims." *Summers v. DOJ*, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007). However,

this statement is only the first part of the rule. Where an unsuccessful claim is *not*

"different in all respects" from the successful claims in an action, fees may be rightfully

assessed. This court has noted, "It is not necessary or proper, however, to exclude time

simply because a party did not prevail on every argument made or claim raised. If the

time expended cannot be divided into work on discrete claims because those claims

involved a common core of facts or related legal theories, the court must 'focus on the

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' The question is whether the plaintiff achieved 'a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *McKenzie v. Kennickell*, 645 F. Supp. 437, 446 (D.D.C. 1986) (citing *Hensley*, 461 U.S. at 434-35).

For a claim to be segregable for fee purposes, it must be distinct *in all respects* from the plaintiff's successful claims. Where the claims are "related," they should be considered as a whole, and the overall success of the action should be evaluated. *Action on Smoking & Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 215-16 (D.C. Cir. 1984). The defendant in *Action on Smoking & Health* argued that nearly half of the attorney time billed by the plaintiff should not be allowed, since that time was spent on a set of challenges brought against an agency regulation in 1979, and the plaintiff was ultimately successful on an interrelated set of challenges brought in 1981. The D.C. Circuit noted, "The Board claims that ASH was a prevailing party only with respect to the 1981 regulations. Since the 1979 challenge was never resolved, the Board contends, ASH cannot be compensated for hours expended on the earlier appeal. We find the Board's contention without merit." *Id*. The Court explained that since "the entire litigation centered on a set of common issues" and that "[b]oth the 1979 and 1981 challenges 'involve[d] a common core of facts' and were 'based on related legal theories,'" the two sets of challenges "were part of a continuous process of regulation on a single topic. They were 'all part and parcel of a single matter.' Hence, we decline to disallow categorically the hours expended on the 1979 appeal." *Id*.

The D.C. Circuit courts have regularly applied this standard, even applying it to cases that were not strictly limited to FOIA. For example, in *Northwest Coalition for Alternatives to Pesticides v. Browner*, 965 F. Supp. 59 (D.D.C. 1997), plaintiffs raised an APA claim in addition to their FOIA claim, and the APA claim was dismissed as moot. However, the court ruled, "EPA argues that plaintiffs should not recover fees for their work on an APA claim that was dismissed as moot. That argument is mistaken. Plaintiff's APA claim was not 'distinct in all respects' from their FOIA claim." *Id*. at 65. Similarly, in *Judicial Watch v. U.S. Dep't of Commerce*, 470 F. 3d 363 (D.C. Cir. 2006), plaintiff Judicial Watch expended considerable time and effort on an unsuccessful discovery effort that was nevertheless related to their FOIA request. There the D.C. Circuit found that the unsuccessful discovery could not "reasonably be viewed as divorced from or unrelated to Judicial Watch's principal FOIA claim." *Id*. at 370.

EPIC's litigation in this case most closely resembles the action brought by Action on Smoking & Health. Like ASH, EPIC's "entire litigation centered on a set of common issues" which "involve[d] a common core of facts" and were "based on related legal theories." *Action on Smoking & Health*, 724 F.2d at 216. Unlike the claims of Northwest Coalition for Alternatives to Pesticides and Judicial Watch, EPIC's claims all stemmed from FOIA, and not from a separate statute or discovery attempt. EPIC's claims were all part of the same FOIA case, related to the same request, and were not easily segregable. While individual claims or motions may have failed, EPIC substantially prevailed in this case, obtaining hundreds of pages of documents and a modified Vaughn Index.

It is particularly illustrative that DHS mischaracterizes EPIC's success with respect to the modified Vaughn Index. The Defendant's Memorandum in Support of

Opposition states, "EPIC is not a 'prevailing party' with respect to its challenge of the

DHS Vaughn Index." DHS Opp. at 8. However, the Court referred to the revised Vaughn

index explicitly when it explained that EPIC would be entitled to some amount of fees

and costs. This Court noted that, after DHS "moved for summary judgment, arguing that

it had conducted an adequate search for records, released all responsive, nonexempt

records, and properly withheld exempt records under the asserted FOIA exemptions" and

"EPIC cross-moved for summary judgment, challenging the sufficiency of DHS's

Vaughn index and the segregability analysis as to seven documents withheld in full by

the Secret Service, … DHS responded by providing a revised, more detailed Vaughn

index and a supplemental declaration on the segregability of the withheld Secret Service

documents." Memorandum Opinion at 3. As a result, this Court concluded, "EPIC will be

entitled to some amount of fees and costs, given…the Vaughn index revisions."

DHS directly contradicts the Court's assessment of the significance of the revised

Vaughn index. DHS further cites *Campaign for Responsible Transplantation v. FDA*, 511

F.3d 187, 196 (D.C. Circ. 2007) for the proposition that "[a] Vaughn index, without more,

does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim."

DHS Opp. at 8. However, the Court has already indicated that it viewed the revised

Vaughn index as one of the factors weighing in favor of EPIC's fees and costs award.

*Campaign for Responsible Transplantation* is therefore inapposite, both because the court

in that case did not consider the release of a revised Vaughn index and because the

plaintiff in that case was not successful in obtaining the release of any other information.

## II.     EPIC Has Sufficiently Documented Time Spent and Has Not Overbilled

### A.     EPIC's Billing Entries are Sufficiently Documented

EPIC's billing entries are contemporaneously recorded and, as required under D.C. Circuit precedent, contain sufficient detail for the court to assess whether or not they are valid and what specific motions or activities relate to each entry. *Barnard v. DHS*, 656 F. Supp. 2d 91, 100 (D.D.C. 2009). EPIC did not rely on "casual after-the-fact estimates of time." As evidenced by EPIC's billing record, EPIC carefully, consistently, and contemporaneously entered billing time into Quickbooks. EPIC maintained "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Weisberg v. Webster*, 749 F.2d 864, 872-73 (D.C. Cir. 1984).

"Plaintiffs are not required to document the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982); *see also Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980); *Heller v. Dist. of Columbia*, 832 F. Supp. 2d 32, 49 (D.D.C. 2011); *McKenzie v. Kennickell*, 645 F. Supp. 437, 447-48 (D.D.C. 1986*); Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir. 1973). As in *McKenzie*, "The government may quibble over individual entries, claiming they are vague or unclear. However, in the context of the entire application, the entries enable this Court to make an independent, intelligent, and reasonable determination whether or not the hours claimed are justified. *McKenzie v. Kennickell*, 645 F. Supp. at 447-48. EPIC's billing entries state the date of the work performed, the attorneys involved, the amount of time devoted to the matter, and a sufficiently detailed description of the activity performed, *e.g.* "Drafting scheduling proposal/order," "Conference with MR to discuss

court deadlines and fees motion," "email with MR regarding opposition and reply." Similar billing entries have been considered sufficient by the D.C. Circuit. *Jordan v. DOJ*, 691 F.2d 514, 520 (D.C. Cir. 1982) (Finding that "to enable opposing counsel adequately to assess the merits of the motion, and the court to fulfill its obligations, no more is necessary than 'fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, [and] associates. . . .'"); *see also Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d at 167. EPIC's billing entries mirror examples cited in *Jordan*, and are nearly identical to entries in other EPIC cases (including a very recent case against DHS) in which EPIC was granted fees by the court. EPIC v. DHS, 811 F. Supp. 2d 216, 239 (D.D.C. 2011).

DHS' assertions that EPIC's descriptions must specifically identify the particular issue being researched are incorrect. EPIC is not required to record in its billing records what specific sub-issues within a particular brief were being researched at a given time. Courts have simply not required this level of specificity. The D.C. Circuit has required that plaintiffs identify the particular motion associated with a given billing time. EPIC has done this consistently in EPIC's billing record (*See, e.g.* Docket #25, Exhibit 2, "Drafting scheduling proposal/order.")

DHS claims that EPIC's records are "rife" with inconsistencies and inaccuracies. The agency cites two examples to support this gross overstatement. In the first instance, DHS claims that EPIC ought to be denied fees because of a simple typo – which EPIC corrected before filing with the Court. EPIC had originally mistyped one number – March 23 instead of March 21. When EPIC submitted EPIC's billing report to DHS, DHS

counsel raised this issue. EPIC corrected the typo and EPIC's submissions to the Court reflect that correction. DHS has no viable claim that the time itself is inaccurate – indeed, the amount of time claimed by EPIC is a reasonable amount of time to be spent on a scheduling proposal which involved several back and forth communications with opposing counsel. Instead, the agency seems to contend that EPIC should be denied compensation for this time on the basis of one misplaced numeral.

DHS' second, and final example of EPIC's "inconsistent" billing is the 2.3 hours that EPIC spent preparing documents associated with the filing of EPIC's complaint. As EPIC has already explained to opposing counsel on the telephone, these entries do not reference "attachments" to this complaint. They refer to the preparation of documents associated with filing any lawsuit in D.C. District Court – a civil cover sheet, 7.1 Statement, and summons to the agency, Attorney General, and the U.S. Attorney for the District of Columbia. A junior attorney at EPIC spent time preparing each of these documents, as well as researching the correct recipients for each summons. At the time that this lawsuit was instigated, the D.C. District Courts had not yet instituted e-filing, so EPIC's attorney had to prepare each of these documents, scan them (because several documents had to be signed), burn them onto a CD, make several copies of each document, and then hand deliver them to the Court. EPIC also had to prepare and send via certified mail each summons.

At the bottom of page 13 in DHS' opposition, the agency actually disputes several entries that do not exist in EPIC's billing record as submitted to the Court. DHS states that "[EPIC] further claims to have spent 1.75 hours reviewing, discussing, holding conference {sic}, and editing its opposition to DHS's motion for extension of time…"

DHS Opp. at 13. When EPIC originally approached opposing counsel regarding

settlement, EPIC had included several entries - totaling 1.75 hours - in its billing record

that referenced EPIC's October 2012 opposition to one of DHS' (several) motions for

extension. In a letter to EPIC, opposing counsel disputed these entries. Because these

were hours spent on an "unsuccessful claim[] that [was] distinct in all respects from

successful claims" EPIC, in good faith, omitted these hours from the billing record it

submitted to this Court. *Summers v. DOJ*, 477 F. Supp. 2d 56, 63-64 (D.D.C. 2007).

## B.      EPIC Has Only Sought Fees for Necessary Work

Contrary to Defendant's claims, EPIC did not overstaff this case. A close

examination of the billing records reveals that throughout the case, Ms. McCall and Mr.

Rotenberg were supervising attorneys, while several junior attorneys worked on discrete

matters in this case. For example, Ms. McCall worked in concert with Ms. Horwitz, Mr.

Scott, and Mr. Brody on EPIC's Motion for Summary Judgment. Ms. McCall, Ms.

Horwitz, Mr. Scott, and Mr. Brody did not do duplicative work. The September 17, 2012

meeting that DHS references was a meeting in which Mr. Rotenberg and Ms. McCall,

supervising attorneys, briefed junior attorneys, Ms. Horwitz, Mr. Scott, and Mr. Brody,

on the case and their assignments. Mr. Scott then worked on the segregability section of

EPIC's Motion for Summary Judgment. Mr. Brody worked on the Vaughn Index section,

and Mr. Horwitz and Ms. McCall worked on the remainder of the memorandum and

associated filings. There was no duplication here. Each attorney worked on specific

portions of the memorandum. The number of hours required for this motion was

relatively modest for a 24-page supporting memorandum with associated filings. The

total number of hours billed would not have varied had the work been performed by one attorney or four attorneys.

Defendant asserts, without citation or explanation, that "Attorneys ordinarily do not charge their clients fees for time spent on internal meetings…" DHS Opp. at 15. As the Court is likely aware, this is a false assertion. Law firms routinely bill clients for time spent in internal conferences. And in FOIA matters, courts routinely award fees for this time. In *McKenzie v. Kennickell*, 645 F. Supp. at 449-50 (D.D.C. 1986), a D.C. District Court confronted a similar challenge to the plaintiff's billing entries.

> In a detailed supplement to its opposition to plaintiffs' motion, the government argues and attempts to document that plaintiffs' attorneys spent an inordinate amount of time conferring with one another and that this time should not be double or triple billed to the defendant. The Court does not find that the time spent in conferences was excessive and no reduction will be made as a result of this challenge.
>
> It is sufficient to state that conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation. And further, in a lengthy, complex proceeding such as this one, it is not unusual or unexpected that some new lawyers, when brought on board the litigating team, will have to be briefed on the status of the proceeding. Most important, meetings between junior and senior lawyers to discuss the progress of research and review completed assignments are reasonable and appropriate means to secure proper supervision and efficient staffing of large class actions cases such as this. See NACV, 675 F.2d 1319 at 1337. Such supervision is necessary to avoid wasteful or disorganized efforts by inexperienced lawyers keeping fee claims within reasonable bounds. Copeland, 205 U.S. App. D.C. 390, 641 F.2d 880. The Court does not find that excessive or unnecessary conferences were held in this case, and there is no reason or authority for allowing only one lawyer to charge for time that more than one lawyer justifiably spent. *Id.*

Here, too, conferences were an "essential part of effective litigation." In order to be able to effectively conduct litigation, EPIC's attorneys must meet with each other to discuss strategy and litigation options, to brief each other on case developments and to come to agreements about how to respond to defense counsel's motions for extension,

settlement offers, and scheduling proposals. EPIC's billing entries make clear the purpose of each conference, and the amount of time expended was the amount necessary to perform the task.

Regarding Ms. McCall's charges for "each email she sent to opposing counsel and each phone call placed regardless of whether opposing counsel actually answered the call…," opposing counsel's failure to answer calls does not give Ms. McCall back the time spent making the call. The charges for these calls are based a standard typical attorney billing method that has been upheld many times by the Circuit. "Courts in this District and others have often required that attorneys bill in ten-minute or six-minute increments." *Citizens for Responsibility & Ethics v. DOJ*, 825 F. Supp. 2d 226, 230 (D.D.C. 2011); *see also Thomas ex rel. A.T. v. Dist. of Columbia*, 2007 U.S. Dist. LEXIS 20236, 2007 WL 891367, at *4 (D.D.C. 2007); *Blackman v. Dist. of Columbia*, 59 F. Supp. 2d 37, 44 (D.D.C. 1999); *Bd. of Educ. of Frederick Cty. v. I.S.*, 358 F. Supp. 2d 462, 470 (D. Md. 2005). Here, the charges for a single unanswered call or brief email are the lowest charges possible - .1 hour. If opposing counsel fails to answer phone calls or emails, Ms. McCall has to take the time to call back and follow up. That time adds up and EPIC should be compensated for it.

Defendant's assertions regarding EPIC's complaint are similarly false. As discussed earlier in this memorandum, EPIC's billing entries regarding "filing documents" refers to the numerous documents that must be filed along with a complaint. EPIC has, in fact, only billed five hours for researching and drafting EPIC's complaint. This process involves a review of the FOIA case file and history, as well as drafting of the actual

complaint. Defendant agrees that five hours is an appropriate amount of time for EPIC to

have spent drafting EPIC's Complaint. DHS Memorandum in Opposition at 20.

Later in DHS' opposition, Defendant also takes issue with EPIC's billing for time

spent reviewing documents. DHS Opp. at 20. But reviewing documents is a necessary

part of this litigation. EPIC needed to review the documents provided in order to evaluate

the validity of DHS' asserted exemptions. It is common for D.C. Circuit courts to award

fees for time spent reviewing documents that are produced as a result of FOIA litigation.

In an earlier case involving EPIC and DHS, a D.C. District Court held:

> Next, the court considers whether the plaintiff may be compensated for reviewing
> documents released by DHS during the course of litigation that were responsive to
> its FOIA requests. The defendant argues that had this document review been
> conducted during the administrative phase of litigation, this time would not have
> been recoverable and therefore should not be awarded at this stage either…
> Although work performed during administrative proceedings prior to litigation is
> not recoverable under FOIA, Nw. Coal. for Alternatives to Pesticides, 965 F.
> Supp. at 65, it does not follow that reviewing documents during the course of
> active litigation is necessarily part of such an administrative process. Indeed, it
> would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review
> an agency's disclosure for sufficiency and proper withholding during the course
> of its FOIA litigation. The court thus awards fees related to the plaintiff's review
> of DHS's disclosures.

EPIC v. DHS, 811 F. Supp. 2d 216, 239 (D.D.C. 2011).

**C.      EPIC Properly Charged for Ms. Horwitz, Mr. Brody, and Mr. Scott's Time**

Whether or not EPIC's first year attorneys were yet admitted to the bar is not the

pertinent question. The relevant inquiry is whether they had already graduated law school.

The D.C. Circuit allows law school graduates to bill as first year attorneys. *Covington v.*

*District of Columbia*, 839 F. Supp. 894, 900 (D.D.C. 1993) (finding that law school

graduates could have billed under the Laffey rate for attorneys with 1-3 years of experience).

## III.    EPIC Should Receive "Fees on Fees"

"It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Heard v. Dist. of Columbia*, CIV.A.02-296 CKK, 2006 WL 2568013 (D.D.C. Sept. 5, 2006) (internal citations omitted). In fact, the D.C. District courts have upheld fees on fees in the FOIA context many times, including a recent case involving the same parties. *See, e.g., EPIC v. DHS,* 811 F. Supp. 2d 216, 240 (D.D.C. 2011) (holding that "hours reasonably expended in preparing a fee petition are compensable… Because the court determines, upon close scrutiny of the record, that the hours spent by the plaintiff on these tasks were reasonably expended and do not constitute a 'windfall' for the attorneys, the court will award 'fees on fees'"); *Judicial Watch, Inc. v. DHS,* CIV.A.08-2133, 2009 WL 1743757 (D.D.C. June 15, 2009); *Nat. Veterans Legal Services Program v. U.S. Dept. of Veterans Affairs,* 1:96-CV-01740- NHL, 1999 WL 33740260 (D.D.C. Apr. 13, 1999). Defendant does not appear to argue against this proposition, but rather, attacks EPIC's decision to file EPIC's fee motion with the Court instead of accepting Defendant's insufficient settlement offer. Defendant also argues that EPIC's fee reward for this work ought to be denied outright, or at least be significantly reduced, because of EPIC's objection to a settlement offer that would have provided roughly 25% of EPIC's actual time litigating this matter. EPIC has no obligation to accept an insufficient settlement offer. After reviewing the Court's order and associated memorandum opinion, EPIC calculated EPIC's fees and costs and, on March 26, a full fifteen days before EPIC's fees motion would be due before the court, EPIC presented

EPIC's full documentation to the Defendant. Exhibit 2. Defendant failed to respond to EPIC's first email. EPIC's attorney, Ginger McCall, followed up with opposing counsel on April 1, 2013. *Id.* On April 2, opposing counsel replied via email, stating "We will get back to you later this week." *Id.* Later that week, in EPIC's phone call with opposing counsel, opposing counsel was unprepared to put forth a settlement offer and only indicated interest in asking for further delays in this matter.

Defendant made its first settlement offer on April 9, a full two weeks after EPIC had submitted EPIC's billing record to opposing counsel. *Id.* Because of the tardiness of this response, and because of EPIC's impending deadline with the Court, EPIC had already begun to draft EPIC Motion for Fees. DHS' offer was for only $8,000 – less than a third of what EPIC was entitled to at the time, based on EPIC's billing record. *Id.* EPIC declined this offer and offered a $25,000 counteroffer. *Id.* Opposing counsel then offered $10,000. EPIC counter-offered $23,000. *Id.* Opposing counsel has not since proposed a more reasonable settlement offer, and there is nothing stopping DHS from making a more reasonable offer while this matter is pending before the court.

DHS also argues that EPIC spent an inappropriately large amount of time preparing its fees petition. DHS Opp. at 28. In fact, D.C. District courts have found far greater drafting times to be appropriate. *Heard v. Dist. of Columbia,* CIV.A.02-296 CKK, 2006 WL 2568013 (D.D.C. Sept. 5, 2006) (finding that "within 120 hours" was an appropriate amount of time for the preparation of a fee petition). Ms. McCall billed less than two hours for drafting EPIC's fees motion. Mr. Rotenberg billed only .2 hours for reviewing that draft. Clearly this is not excessive. The conferences were necessitated by plaintiff's inability to get in touch with opposing counsel and opposing counsel's failure

to provide a reasonable settlement offer.

**III.    EPIC Should Receive Fees for Time Spent on This Reply**

Under D.C. Circuit law, as discussed above, EPIC is entitled to fees on fees. EPIC is attaching a spreadsheet documenting EPIC's time spent on this reply motion. Exhibit 1. EPIC spent a total of 25.8 additional hours on this Reply motion. The total dollar amount for this Reply is $6607.00, which means that EPIC's total fee and costs for this litigation is $37,197.75 ($30,590.75 + $6607.00).

## CONCLUSION

As the court in *Los Angeles Gay & Lesbian Community Serv. Center v. IRS*, 559 F Supp. 2d 1055(C.D. Cal. 2008), stated:  "Defendant cannot put Plaintiff through the time and expense of enforcing compliance with FOIA and then complain that the resources were out of proportion to the good obtained. Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award." Here, DHS utterly failed to respond to both EPIC's FOIA Request and EPIC's FOIA Appeal. DHS' initial Vaughn Index was insufficient and it was ordered by the Court to disclose several wrongly withheld documents.

As the Court has agreed, EPIC substantially prevailed in this lawsuit, therefore triggering FOIA's fee-shifting provision. EPIC is eligible for and entitled to recover its fees and costs from the DHS in this matter. EPIC's fees are reasonable and supported by the proper documentation. The Court should award EPIC $37,197.75 in fees and costs, as documented in the Exhibits attached to EPIC's Motion for Fees and Exhibit 1 to this motion.

Respectfully submitted,

MARC ROTENBERG


_____ */s/ Ginger P. McCall*_____
GINGER P. MCCALL
JULIA HORWITZ *
Electronic Privacy Information Center
1718 Connecticut Ave. NW
Suite 200
Washington, DC 20009
(202) 483-1140
*Counsel for Plaintiff*

Dated: May 6, 2013

* [Bar status]

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2013, I served the foregoing PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS, including all exhibits and attachments, by electronic case filing upon:

> STUART DELERY
> Assistant Attorney General, Civil Division
> U.S. Department of Justice
>
> JEAN MICHEL VOLTAIRE
> U.S. Department of Justice
> Civil Division, Federal Programs Branch

_____ */s/ Ginger McCall*_____
Ginger McCall
*Counsel for Plaintiff*