# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br>           Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br>           Defendant. | No. 1:11-02261(JDB) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE PLAINTIFF'S REPLY AND EXHIBIT

Plaintiff Electronic Privacy Information Center ("EPIC") hereby submits this memorandum of points and authorities in opposition to the Defendant's ("DHS") motion to strike portions of the plaintiff's reply and exhibit.

## Argument

The DHS mischaracterizes the disputed text in EPIC's reply brief and misstates the scope of Federal Rule of Evidence 408; the motion should be denied for the following reasons:

### I. EPIC Did Not Introduce Settlement Figures to Prove the Validity or Amount of a Disputed Claim

The DHS's motion to strike is based on the mistaken notion that EPIC introduced the contents of settlement negotiations "either to prove or disprove the validity or amount of a disputed claim. . . ." Fed. R. Evid. 408. The statements in

1

question were introduced to support EPIC's argument that it is entitled to "fees on fees" for its work on the motion for fees, the reply motion, and now this motion in opposition. Rule 408 "does not require exclusion if the evidence is offered for another purpose." *See C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 319 (D.D.C. 2008) (internal citations omitted).

The relevant portion of EPIC's reply in support of its motion for attorney fees is contained in Section III, "EPIC Should Receive 'Fees on Fees.'" (Pl.'s Reply at 18-19, ECF No. 27). This section is a direct response to DHS's argument that EPIC is not entitled to fees on fees. *See* (Def. Mem. in Opp'n at 18-19, ECF No. 26). DHS stated "EPIC should not receive 'fees on fees' in this case because it filed its fee motion without responding to defendant's good-faith efforts to negotiate and for refusing to seek a short extension of time to allow the parties the opportunity to reach an agreement on the attorneys' fees issue" *Id*. at 18. In response to the DHS's argument, EPIC cited this Court's precedent regarding fees on fees, and provided a short summary of the settlement proceeding. *See* (Pl.'s Reply at 18-19).

EPIC provided the Court with a description of its attempt to settle the case in order to show that it had taken reasonable steps to avoid accumulating additional fees. Importantly, EPIC did not contrast DHS's settlement offers with the disputed fee number included in DHS's motion in opposition. The settlement history was

not introduced to establish liability or to prove the amount of a disputed claim, and thus did not violate Rule 408.

The DHS's argument that EPIC's Exhibit 2 should be excluded also misses the mark. Exhibit 2 contains the case billing record for attorney Ginger McCall. (Pl.'s Reply Ex. 3). This billing record includes time spent communicating with counsel for DHS regarding a possible settlement, but the existence of the settlement offers is not in dispute. *See* (Def. Mot. in Opp'n at 18). In fact, this Court ordered the parties to "confer and attempt to reach an agreement on fee issues," so there is no need to exclude evidence of the existence of that contact.

## II. Rule 408 Does Not Prohibit Use of the Settlement History to Establish the Reasonableness of Fees on Fees

The DHS's motion should be denied because it relies on an overly broad interpretation of Rule 408 that has been rejected by district courts in the DC Circuit. Rule 408 "was never intended to be a broad discovery privilege," and its "sole means" of fostering settlement negotiations is a "limitation on the admission of evidence produced during settlement negotiations for the purpose of proving liability at trial." *NAACP Legal Defense & Educational Fund, Inc. v. DOJ*, 612 F. Supp. 1143, 1146 (D.D.C. 1985). *See also In re Subpoena Issued to Commodity Futures Trading Comm'n*, No. 04-564 (JDB), 2005 U.S. Dist. LEXIS 9074 at 21 (D.D.C. Apr. 28, 2005) ("Whatever else might be said about this legal landscape, it does not reflect a consensus of support for a settlement privilege in federal court.").

This Court previously considered settlement offers when reviewing requests for fees on fees. In *Force v. Salazar*, this Court considered the amount a defendant's settlement offer when determining whether the plaintiffs were entitled to recover fees incurred after the offer was made. *Salazar*, No. 10-1057 (JDB), 2013 U.S. Dist. LEXIS 1819 at *39-40 (D.D.C. Jan. 7, 2013). The description of the settlement process in this case is the same – EPIC was attempting to show its reason for filing the fee motion in response to characterizations of the settlement process first put forward by the DHS.

### III. Defendant Cites Out-of-Circuit Cases That Are Inapplicable to the Discussion of Settlement Negotiations in This Case

Defendant cites *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988) to support the claim that Federal Rule of Evidence 408 "excludes from evidence all statements made in the course of settlement negotiations." (Def. Mem. In Opp'n at 2). However, *Fiberglass Insulators* is distinguishable from the current case in many respects, and moreover, the citation itself was taken out of context. The issue in *Fiberglass Insulators* concerned the admissibility of a settlement offer made in the course of "settling prior related litigation between the same parties." *Id*. at 653. Plaintiffs in *Fiberglass Insulators* argued that, since the settlement offers they hoped to introduce as evidence at their antitrust trial came from a separate contract dispute, they could avoid the restriction of Federal Rule of Evidence 408. *Id.* at 654. The court found, however, that the underlying goal of

4

promoting settlements was best served by treating settlement offers in the separate, though related, case as excludable evidence in *Fiberglass Insulators*. Since the litigation in that case was "but the latest manifestation of an acrimonious dispute of long standing between two former business associates," *id*, the court anticipated further iterations of this ongoing dispute, and ruled that the purposes of Rule 408 were better served by encouraging the parties to settle. The citation that Defendant relies upon commenced the Fourth Circuit's discussion of Rule 408 in adjudicating interrelated disputes such as the one at issue in *Fiberglass Insulators*.

Defendant also attempts to rely upon *Cheyenne River Sioux Tribe v. United States*, 806 F.2d 1046 (Fed. Cir. 1986), for the proposition that "[a]n unaccepted offer of settlement ordinarily is not admissible evidence to show either the existence or amount of liability" and that "consideration of the settlement offers as reflecting an admission of liability in the amount of the offer would seriously discourage parties from discussing settlement or making settlement offers. The law, however, favors settlement of litigation which reduces the burden on courts and counsel and mitigates the antagonism and hostility that protracted litigation leading to judgment may cause." (Def. Mem. in Opp'n at 3). However, this, too, mischaracterizes the context of the case. In *Cheyenne River Sioux Tribe*, the Court of Appeals vacated the lower court's ruling that a settlement offer from seven years prior constituted "fair and equitable compensation." 806 F.2d at 1049. Counsel for

5

the Tribes and for the Government had come to a settlement agreement in a nearly 30-year-old land dispute regarding ownership rights to Sioux territories that had been acquired by the U.S. Government pursuant to an improperly ratified 1877 Act. After presenting the settlement offer to the Court, however, six of the eight tribes refused to accept the request, and litigation continued until the Court of Claims attempted to end the case in 1986 by imposing the costs agreed to by both parties' counselors seven years prior. *Id. See also Sioux Tribe of Indians v. United States*, 8 Cl. Ct. 80, 84, 86-90 (1985). The Federal Circuit vacated that decision under Rule 408 because the Court of Claims used the terms of a settlement offer in order to assess the amount of the government's liability. The language that Defendant cites in *Cheyenne River Sioux Tribe*, like the language cited in *Fiberglass Insulators*, was merely the Federal Circuit's introduction to a much more specific, targeted discussion about the appropriate use of settlement negotiation information.

*Cheyenne River Sioux Tribe* presents exactly the kind of fact pattern that Federal Rule of Evidence 408 suggests: one party makes a settlement offer, and when the terms of the offer are disclosed, the fact-finder adopts the specific number offered as proof of the amount that the claim is worth. That fact pattern is certainly not applicable here. EPIC cited to the settlement negotiations not to prove to the Court that Defendant is liable, nor to prove to the Court that Defendant has

6

promised a minimum settlement amount. Federal Rule of Evidence 408 does not bar the introduction of settlement negotiations; it only bars particular uses of that information by the finder of fact.

## Conclusion

The Court should deny the Defendant's motion to strike because Rule 408 does not prohibit EPIC's discussion of the attempt to settle the case in order to show that its request for fees on fees was reasonable.

                                  Respectfully submitted,

                                  MARC ROTENBERG (DC Bar # 422825)

                    By:    /s/ Ginger P. McCall
                              GINGER P. MCCALL (DC Bar #1001104)
                              ALAN J. BUTLER (DC Bar #1012128)
                              ELECTRONIC PRIVACY
                              INFORMATION CENTER
                              1718 Connecticut Avenue, N.W.
                              Suite 200
                              Washington, D.C. 20009
                              (202) 483-1140 (telephone)
                              (202) 483-1248 (facsimile)

Dated: May 9, 2013