### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**ELECTRONIC PRIVACY
INFORMATION CENTER,**

    **Plaintiff,**

    **v.**

**U.S. DEPARTMENT OF HOMELAND
SECURITY,**

    **Defendant.**

**Civil Action No. 11-2261 (JDB)**

### MEMORANDUM OPINION

The Electronic Privacy Information Center ("EPIC") brings this action against the United States Department of Homeland Security ("DHS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Before the Court is [25] EPIC's motion for attorney's fees, and [28] DHS's motion to strike a portion of [27] EPIC's reply brief in support of its fee motion. For the reasons set forth below, EPIC's motion for attorney's fees will be granted in part and denied in part, and DHS's motion to strike will be denied.

### BACKGROUND

On February 1, 2011, DHS published notice in the Federal Register announcing its intent to create a new system to monitor social media networks, titled "Publicly Available Social Media Monitoring and Situational Awareness Initiatives." Compl. [Docket Entry 1] ¶ 5; see also 76 Fed. Reg. 5603, No. DHS-2011-0003 (Feb. 1, 2011). The program was designed to monitor "publicly available online forums, blogs, public websites, and message boards," and "disseminate

relevant and appropriate de-identified information to federal, state, local, and foreign governments, and private sector partners."  76 Fed. Reg. at 5603.

EPIC filed a FOIA request "[i]n order to allow the public to assess the privacy risks to social media users, on April 12, 2011."  Pl.'s Mot. for Att'y's Fees [Docket Entry 25] at 3.   Eight months later, DHS had not produced any documents.  Compl. ¶ 27.  Hence, EPIC filed this lawsuit, seeking an injunction to compel DHS to comply with FOIA.  Id. ¶ 38.  DHS began producing responsive documents three weeks later.  Over the next year, DHS made rolling productions, totaling approximately five hundred pages of documents, some of which were partially redacted.  See Decl. of James Holzer, Attach. 3 to Def.'s Mot. for Summ. J. [Docket Entry 12-3] ¶¶ 15-17; Decl. of Julie Ferrell ("Ferrell Decl."), Attach. 5 to Def.'s Mot. for Summ. J. [Docket Entry 12-5] ¶¶ 26-29.  DHS also withheld 230 responsive documents under various FOIA exemptions.  Ferrell Decl. ¶ 29.

DHS then moved for summary judgment, arguing that it had adequately searched for and produced all responsive, nonexempt records.  Def.'s Mot. for Summ. J. [Docket Entry 12] at 8. EPIC filed a cross-motion for summary judgment, making two objections to DHS's efforts to comply with their FOIA request: (1) that DHS's Vaughn index was insufficient, and (2) that DHS should have produced in redacted form seven documents from the Secret Service that had been withheld in their entirety ("the Secret Service documents").  Pl.'s Opp'n & Cross Mot. for Summ. J. ("Pl.'s MSJ") [Docket Entry 16] at 1.  EPIC also requested attorney's fees and costs.  Id. at 14.

DHS disputed both of EPIC's arguments, and asked the Court to defer ruling on EPIC's request for attorney's fees.  Def.'s Reply & Opp'n [Docket Entry 20] at 1-2.  But despite arguing for several pages that their original Vaughn index was proper, DHS attached an updated, more-specific Vaughn index.  See Updated Vaughn Index (Oct. 26, 2012), Attach. 1 to Def.'s Reply &

Opp'n [Docket Entry 20-1].  In doing so, DHS maintained its position that "the original Index was sufficient," but admitted that it "could be made more clear."  Def.'s Reply & Opp'n at 6. Satisfied with the updated version, EPIC then withdrew its objections to DHS's <u>Vaughn</u> index, while continuing to press its objections to DHS's withholding of the Secret Service documents, and renewing its request for attorney's fees and costs.  Pl.'s Reply in Supp. of Cross Mot. for Summ. J. [Docket Entry 22] at 1-2.

This Court granted in part and denied in part both parties' motions for summary judgment.  <u>See</u> Mar. 4, 2013 Mem. Op. [Docket Entry 23].  The Court ordered DHS to produce six of the seven Secret Service documents in redacted form, but found that one of the seven had been properly withheld in full, finding that the non-exempt portions were not reasonably segregable.  <u>See id.</u>; <u>see also</u> Mar. 4, 2013 Order [Docket Entry 24].  The Court did not rule on EPIC's request for attorney's fees, and instead ordered "that, pursuant to Local Civil Rule 54.2(a), the parties shall confer and attempt to reach an agreement on fee issues."  Mar. 4, 2013 Order. Although the Court was "not deciding the issue" at that time, "it note[d], in the hope of guiding the parties' discussions, that EPIC will be entitled to some amount of fees and costs, given the agency's release of responsive documents, the <u>Vaughn</u> index revisions, and the Court's resolution of the instant motions."  Mar. 4, 2013 Mem. Op. at 9.

The Court's optimism for an agreement on fees and costs proved unfounded—EPIC filed its motion for attorney's fees the following month.  In its opposition brief, DHS made reference to a settlement offer that EPIC had rejected.  <u>See</u> Def.'s Opp'n to Mot. for Att'y's Fees ("Def.'s Opp'n") [Docket Entry 26] at 18.  In its reply, EPIC actually included the relevant settlement communication, revealing to the Court (and anyone monitoring the public docket) the amount for which DHS had offered to settle the fee issue.  <u>See</u> Ex. 2 to Pl.'s Reply in Supp. of Mot. for

Att'y's Fees ("Pl.'s Reply") [Docket Entry 27-2].  Three days later, DHS filed a motion to strike the portions of EPIC's reply brief referencing the settlement offer, citing the bar in Federal Rule of Evidence 408 to the admissibility of settlement communications "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a).

## LEGAL STANDARDS

The Freedom of Information Act provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  This statutory language "naturally divides the attorney-fee inquiry into two prongs," which the D.C. Circuit "has long described as fee 'eligibility' and fee 'entitlement.'"  Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 524 (D.C. Cir. 2011).  Under the eligibility prong, a court "asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."  Id.  A FOIA requester "has substantially prevailed if the complainant has obtained relief through either" a court order or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii); see also Brayton, 641 F.3d at 525 ("[T]he OPEN Government Act of 2007 . . . revived the possibility of FOIA fee awards in the absence of a court decree.").

If the requester is eligible for a fee award, a court "proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees."  Brayton, 641 F.3d at 524; accord Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368-69 (D.C. Cir. 2006) (Judicial Watch I).  The four "entitlement" factors are: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct."

Morley v. CIA, 719 F.3d 689, 690 (D.C. Cir. 2013).  In applying this test, "[n]o one factor is dispositive."  Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  "The sifting of those criteria over the facts of a case is a matter of district court discretion."  Tax Analysts v. DOJ, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

Finally, if a court determines that a FOIA requester is both eligible for and entitled to attorney's fees, the court must calculate the proper amount of the fee award.  The first step "is to establish the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate."  Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1323 (D.C. Cir. 1982).  Once properly calculated, "the lodestar may be adjusted to reflect various other factors."  Id.  This process is also one of district court discretion, as the D.C. Circuit has recognized "that some of the elements of this formula [are] necessarily somewhat imprecise."  Id.; see also Copeland v. Marshall, 641 F.2d 880, 893 (D.C. Cir. 1980) (en banc) ("[W]e ask only that the district court judges exercise their discretion as conscientiously as possible, and state their reasons as clearly as possible.").

## DISCUSSION

As DHS essentially concedes, EPIC is both eligible for and entitled to an award of attorney's fees and costs.  The parties vigorously dispute the amount of fees, however, with EPIC requesting $37,197.75 in fees and costs, and DHS proposing a meager $1,992.50.  DHS offers a variety of objections to EPIC's proposal.  Some have merit; others do not.  After briefly analyzing the questions of "eligibility" and "entitlement," the Court will consider each objection in turn.  For the reasons set forth below, the Court finds that EPIC is entitled to most, but not all of the fees it has requested, and will order a total award of $29,841.67 in attorney's fees and $350 in costs.

## I.        EPIC is eligible for attorney's fees.

EPIC is eligible for attorney's fees, because it has "substantially prevailed" within the meaning of FOIA.  There are two ways to satisfy the "substantially prevailed" requirement under FOIA, and EPIC meets both.  First, EPIC "obtained relief through . . . a judicial order."  5 U.S.C. § 552(a)(4)(E)(ii)(I).  Faced with cross-motions for summary judgment, this Court granted in part and denied in part both parties' motions.  See Mar. 4, 2013 Mem. Op. at 9-10.  But EPIC obtained nearly all of the relief it was seeking, as the Court ordered DHS to produce all reasonably segregable portions of six of the seven documents that remained in dispute.  Id.  True, this Court denied EPIC's motion with respect to one of the seven Secret Service documents, but a FOIA requester can still "substantially prevail" even when it obtains less-than-full relief.  See, e.g., Judicial Watch I, 470 F.3d at 371 (FOIA requester awarded fees after a partial litigation victory).[1]

EPIC's advocacy also caused "a voluntary or unilateral change in position by the agency," 5 U.S.C. § 552(a)(4)(E)(ii)(II).  After producing nothing in response to EPIC's FOIA request for approximately eight months, DHS released hundreds of responsive documents within three weeks of receiving EPIC's complaint in this action.  Similarly, DHS produced a revised Vaughn index meeting EPIC's proposed specifications, after EPIC took issue with DHS's first attempt.[2] These tangible successes further support the common-sense notion that EPIC has "substantially prevailed" in this matter.  See, e.g., Brayton, 641 F.3d at 525 ("[P]laintiffs can now qualify as 'substantially prevailing,' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims.").  Presumably for these reasons, DHS does

---

[1] Whether EPIC is entitled to all of its fees for work on issues for which it did not prevail is a different question, which the Court will consider in further detail infra, Section IV.E.

[2] DHS does not argue that EPIC's Vaughn index objections were "insubstantial," 5 U.S.C. § 552(a)(4)(E)(ii)(II), so the Court will not consider the argument.

not meaningfully dispute that EPIC is eligible for fees as a prevailing party under FOIA.  See generally Def.'s Opp'n.

## II.     EPIC is entitled to attorney's fees.

Next, the Court applies the D.C. Circuit's four-factor test to determine whether EPIC is entitled to fees.  The Court must consider: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct."  Morley, 719 F.3d at 690.

The "public benefit" factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought."  Davy, 550 F.3d at 1159.  As FOIA requests go, the public benefit derived from this one was exceptional.  EPIC obtained and disclosed documents relating to a matter subject to an ongoing national debate: the tension between individual privacy interests and the national-security needs of our government in the digital age.  Regardless of one's views on the merits, there is no doubt that EPIC's FOIA request made a contribution to this national conversation.  Documents obtained through the request were analyzed in the Washington Post.  See Ellen Nakashima, DHS Monitoring of Social Media Concerns Civil Liberties Advocates, The Washington Post, Jan. 13, 2012 ("[M]onitoring for 'positive and negative reports' on U.S. agencies falls outside the department's mission to 'secure the nation,' said the Electronic Privacy Information Center, which obtained a copy of a contract and related material describing DHS's social media monitoring through its FOIA suit.").[3]  And EPIC's FOIA work on this matter was discussed by several other prominent media outlets.  See, e.g., Privacy Group Sues DHS Over Social Media Monitoring

---

[3]  Available at http://articles.washingtonpost.com/2012-01-13/world/35441734_1_social-media-dhs-documents-reports

_Program_, FOXNews.com, Dec. 24, 2011;[4] Liz Klimas, <u>Which Keywords on Twitter Get the Government's Attention?</u>, The Blaze, Dec. 28, 2011;[5] Mark Hosenball, <u>Homeland Security Watches Twitter, Social Media</u>, Reuters, Jan. 11, 2012;[6] Jaikumar Vijayan, <u>DHS Media Monitoring Could Chill Public Dissent, EPIC Warns</u>, Computer World, Jan. 16, 2012;[7] Mark Rockwell, <u>DHS Social Media Monitoring Practices Revealed Under FOIA</u>, Government Security News, May 29, 2012;[8] Robert N. Charette, <u>Do You Need to Worry About DHS Looking at Your Social Media Conversations?</u>, IEEE Spectrum, May 29, 2012;[9] Reuven Cohen, <u>Dept. of Homeland Security Forced to Release List of Keywords Used to Monitor Social Networking Sites</u>, Forbes, May 26, 2012;[10] Kevin Fogarty, <u>DHS List of Words You Should Never Blog or Tweet. Ever.</u>, IT World, May 31, 2012.[11]

In addition to the substantial media coverage, documents arising out of EPIC's FOIA request were also heavily featured at a congressional hearing devoted to DHS's social media monitoring.   <u>See, e.g.</u>, <u>DHS Monitoring of Social Networking and Media: Enhancing Intelligence Gathering and Ensuring Privacy, Hearing Before the Subcomm. on Counterterrorism and Intelligence of the H. Comm. on Homeland Security</u>, 112th Cong. ("Homeland Security Hr'g") (Feb. 16, 2012) (statement of Rep. Speier, Ranking Member) ("I am deeply troubled by

---

[4]   <u>Available  at</u>  http://www.foxnews.com/politics/2011/12/24/privacy-group-sues-dhs-over-social-media-monitoring-program/

[5]   <u>Available  at</u>  http://www.theblaze.com/stories/2011/12/28/which-keywords-on-twitter-get-the-governments-attention/

[6]   <u>Available  at</u>  http://www.reuters.com/article/2012/01/11/us-usa-homelandsecurity-web sites-idUSTRE80A1RC20120111

[7]   <u>Available at</u> http://www.computerworld.com/s/article/9223441/DHS_media_monitorin g _could_chill_public_dissent_EPIC_warns

[8]   <u>Available at</u> http://www.gsnmagazine.com/node/26448

[9]   <u>Available  at</u>  http://spectrum.ieee.org/riskfactor/telecom/internet/do-you-need-to-be-careful-about-the-words-you-use-in-social-media-conversations

[10]   <u>Available  at</u>  http://www.forbes.com/sites/reuvencohen/2012/05/26/department-of-ho meland-security-forced-to-release-list-of-keywords-used-to-monitor-social-networking-sites/2/

[11]   <u>Available  at</u>  http://www.itworld.com/security/279429/dhs-list-words-you-should-never-ever-blog-or-tweet-ever

the document that has just been put into the record by epic.org."). This is the sort of public benefit that FOIA was designed to promote.

Next, "[t]he second and third factors, which are often considered together, assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees." Davy, 550 F.3d at 1160 (quoting Tax Analysts, 965 F.2d at 1095). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." Id. These factors also favor non-profit organizations like EPIC, which "aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote." Id. As the D.C. Circuit has explained, those "requesters who seek documents for public informational purposes" are favored by FOIA, and they "engage in the kind of endeavor for which a public subsidy makes some sense." Id. And even if some private benefit accrued to EPIC by means of their success, "Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles." Campbell v. DOJ, 164 F.3d 20, 35-36 (D.C. Cir. 1998). Hence, the second and third factors also favor EPIC.

Finally, the fourth factor, "the reasonableness of the agency's conduct," does not strongly weigh in favor of either party. True, the Court held that DHS violated its statutory responsibilities in responding to EPIC's FOIA request—but that will be true in any FOIA case in which the plaintiff obtains court-ordered relief. DHS also produced a revised Vaughn index upon receiving plaintiff's objections, obviating the need for a judicial determination on that issue. DHS's conduct—while no doubt falling short of FOIA's requirements—was not egregiously unreasonable. Hence, the fourth factor is more or less neutral in this analysis.

Considering all four factors together, the Court finds that EPIC is not just "eligible," but is also "entitled" to attorney's fees under FOIA's fee-shifting provision. DHS essentially concedes as much in its opposition brief, which focuses on the amount of fees to be awarded. See Def.'s Opp'n at 1 ("While we do not dispute that EPIC is entitled to some fees in proportion to its minimal success, its request of $30,590.75 is unreasonably excessive and wholly unsupported.").

### III.   EPIC is entitled to "fees on fees."

EPIC asks not only for attorney's fees for the underlying litigation, but also for its work in litigating this fee motion—that is, "fees on fees."[12] DHS opposes this request, primarily on the grounds that EPIC "vexatiously imposed unnecessary burdens on defendant and the Court" by rejecting DHS's settlement offers, and by refusing to consent to an extension of time to continue settlement negotiations. See Def.'s Opp'n at 18-19.

As EPIC argues—and DHS does not appear to dispute—"[i]t 'is settled in this circuit' that 'hours reasonably devoted to a request for fees are compensable.'" Judicial Watch, Inc. v. DOJ, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) (quoting Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest., 771 F.2d 521, 528 (D.C. Cir. 1985)). Although there appears to be no D.C. Circuit case law applying this principle in the FOIA context, other courts in this district have done so without hesitation. See, e.g., id.; EPIC v. DHS, 811 F. Supp. 2d 216, 140 (D.D.C. 2011) ("[H]ours 'reasonably expended' in preparing a fee petition are compensable."). This Court agrees—there is no reason to treat FOIA's fee-shifting provision differently than those for which the D.C. Circuit has approved awards of "fees on fees." See, e.g., Noxell, 771 F.2d at 528 (upholding "fees on fees" under the Lanham Act); Sierra Club v. EPA, 769 F.2d 796, 811-12 (D.C. Cir.

---

[12] EPIC does not seek attorney's fees for its opposition to DHS's motion to strike.

1985) (upholding "fees on fees" under the Clean Air Act).   Hence, EPIC is entitled to a reasonable award of attorney's fees for litigating this motion.

**IV.   EPIC's fee award will be reduced in the Court's discretion.**

The Court will now exercise its discretion to calculate a "reasonable" fee award, as directed by 5 U.S.C. § 552(a)(4)(E)(i).   The Court will begin with EPIC's request for $36,847.75 in fees and $350 in costs,[13] and will ultimately reduce that amount slightly, for a variety of reasons.

**A.   Starting Point: Laffey and the Lodestar**

"The usual method of calculating a reasonable fee amount is to 'multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount.'" Judicial Watch, Inc. v. DOJ, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (Judicial Watch II) (quoting Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794, 801 (D.C. Cir. 1998).   To determine a "reasonable" hourly rate, the Court considers "the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984).   Of course, non-profit counsel may not actually bill for their services.   To solve this problem, "[f]or public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the 'Laffey Matrix,' a schedule of fees based on years of attorney experience." Judicial Watch II, 774 F. Supp. 2d at 232; see also Covington v. District of Columbia, 57 F.3d 1101, 1105-12 (D.C. Cir. 1995) (approving of the Laffey matrix and affirming fee award calculated with it).   Using the Laffey matrix, EPIC calculated a lodestar of $36,847.75.   DHS does not question EPIC's

_____

[13] DHS does not object to an award of $350 in costs.

arithmetic, but it does object to the total number of hours and the hourly rate charged by three of EPIC's attorneys.  The Court now turns to these objections.[14]

### B.   Hourly Rate of Attorneys Brody, Horwitz, and Scott

DHS objects to the hourly rate charged by three of the seven EPIC attorneys who billed time on this matter: David R. Brody, Julia Horwitz, and Jeramie D. Scott.  See Def.'s Opp'n at 16-18.  EPIC billed these attorneys at a rate of $245 per hour, which corresponds to the Laffey rate for attorneys with "1-3 years" of legal experience.  But as DHS points out, and EPIC does not dispute, none of these attorneys—all 2012 law school graduates—were admitted to practice law in any jurisdiction while they worked on this case.  Id. at 16.  Hence, they are more properly categorized under the heading "Paralegals & Law Clerks," based upon their bar status during the relevant time period, and the fact that they had not yet achieved "1-3 years" of legal experience.  See EPIC, 811 F. Supp. 2d at 238 ("[B]ecause the plaintiff does not refute that one of its attorneys, Ms. Ginger McCall, conducted work on this litigation prior to her admittance to the bar, the court applies the 'paralegal/clerk' Laffey rate to this time.").  The Court will recalculate their fees with the $145 per hour rate applicable to Law Clerks under the Laffey matrix:

**David R. Brody**
Original request: 10.40 hours at $245 per hour = $2,548
As modified by the Court: 10.40 hours at $145 per hour = $1,508
Deduction: $2,548 - $1,508 = $1,040

**Julia Horwitz**
Original request: 12.70[15] hours at $245 per hour = $3,111.50
As modified by the Court: 12.70 hours at $145 per hour = $1,841.50
Deduction: $3,111.50 - $1,841.50 = $1,270

---

[14] In this opinion, the Court discusses most, but not all of DHS's individual objections. For those the Court does not discuss—primarily, a small handful of highly specific objections to individual billing entries—the Court notes that it considered such objections and found them unpersuasive.

[15] Horwitz billed additional hours after her admission to the bar.  This time is not included in these 12.70 hours, but it will be considered below.

      <u>**Jeramie D. Scott**</u>
      Original request: 13.00 hours at $245 per hour = $3,185
      As modified by the Court: 13.00 hours at $145 per hour = $1,885
      Deduction: $3,185 - $1,885 = $1,300

EPIC's fee award will be reduced accordingly.

This covers all of the time by attorneys Brody and Scott,[16] but Julia Horwitz also billed time to this matter after her admission to the Maryland bar.  <u>See</u> Pl.'s Bill of Litig. Fees and Costs, Ex. 2 to Pl.'s Mot. for Att'y's Fees [Docket Entry 25-3] at 11 (1.30 hours in April 2013); EPIC Litigation Time Sheet, Attach. 1 to Pl.'s Reply [Docket Entry 27-1] at 3 (14.20 hours in May 2013); <u>see also</u> Decl. of Jean-Michel Voltaire, Esq. [Docket Entry 26-4] at ¶ 10 (Horwitz admitted to Maryland bar on December 12, 2012).  Upon admission to the bar, categorizing Ms. Horwitz as a "Law Clerk" rather than an attorney would ignore the Court of Appeals of Maryland's determination that she is "qualified to practice law and is of good moral character"— a hard-earned achievement that this Court will not overlook.  <u>See</u> Rule 12, Rules Governing Admission to the Bar of Maryland, <u>available at</u> http://www.courts.state.md.us/ble/pdfs/baradmissionrules.pdf.

There is another problem.  While "Law Clerk" would not be an appropriate title for an attorney admitted to practice law, it would also be inaccurate to categorize Ms. Horwitz as an attorney with "1-3 years" of legal experience, just five months after her bar admission and eleven months after her graduation from law school.[17]  Ms. Horwitz's work on this case has exposed a

---

      [16] To be precise, Scott also worked on this case in April 2013, Pl.'s Bill of Litig. Fees and Costs, Ex. 2 to Pl.'s Mot. for Att'y's Fees at 12 (0.10 hours on April 10, 2013), by which time he very well may have been admitted to the bar.  But because his affidavit does not provide an admission date, and EPIC's reply brief does not offer any assistance (after being put on notice of the issue in DHS's opposition), the Court will assume for purposes of deciding this motion that all of attorney Scott's time on this case was billed before he was admitted to the bar, including the 0.10 hours in April 2013.

      [17] Horwitz graduated from law school on June 9, 2012. <u>See</u> Horwitz Aff. ¶ 4 ("I am a 2012 graduate of the University of Chicago Law School."); Remarks of Prof. R.H. Helmholz,

curious flaw in the <u>Laffey</u> matrix: there is no category for an attorney who has been admitted to practice law but who has less than a full year of legal experience.  <u>See</u> 2013 <u>Laffey</u> Matrix (showing $145 per hour rate for "Paralegals & Law Clerks" and $245 per hour rate for "1-3 years" of experience), <u>available at</u> http://www.justice.gov/usao/dc/divisions/Laffey_Matrix _2003-2013.pdf.  Accordingly, the Court, in its discretion, will split the difference, and award fees at an hourly rate of $195 per hour—halfway between the $145 per hour rate for Law Clerks and the $245 per hour rate for attorneys with 1-3 years of experience.  Hence, the Court will recalculate these fees as follows:

**Julia Horwitz**
Original request: 15.50 hours at $245 per hour = $3,797.50
As modified by the Court: 15.50 hours at $195 per hour = $3,022.50
Deduction: $3,797.50 - $3,022.50 = $775

In modifying these fees to account for Ms. Horwitz's bar status, the Court cannot fathom why the <u>Laffey</u> matrix should contain such an ambiguity.  In preparing future versions of the <u>Laffey</u> matrix, the U.S. Attorney's Office for the District of Columbia may wish to consider finding a category for admitted attorneys with less than a full year of legal work experience, or simply modifying the "1-3 years" of experience category to read "0-3 years" of experience.

### C.  Sufficiency of EPIC's Billing Entries

DHS claims that EPIC's "billing entries are too vague to allow the Court to assess their reasonableness," and are "rife with inconsistencies and inaccuracies that call into question their contemporaneousness."  Def.'s Opp'n at 13.  The Court agrees only in part.

---

(showing 2012 graduation date for the University of Chicago Law School as June 9, 2012), <u>available at</u> http://www.law.uchicago.edu/alumni/magazine/fall12/graduation; <u>see also</u> Fed. R. of Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

The D.C. Circuit "has been very explicit about what documentation is necessary to recover attorneys fees." Weisberg v. Webster, 749 F.2d 864, 872 (D.C. Cir. 1984). To obtain a fee award, the movant must provide "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982). "Casual, after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees." Id.

DHS offers a small handful of examples of alleged defects in EPIC's billing entries that supposedly "call into question their contemporaneousness." Def.'s Opp'n at 13. But none of these examples are sufficiently troublesome that the Court would question the representations— in affidavits sworn under penalty of perjury—from each of EPIC's attorneys, stating that the records were accurately and contemporaneously recorded. See Butler Aff. ¶ 7; Stepanovich Aff. ¶ 8; Brody Aff. ¶ 7; McCall Aff. ¶ 10; Scott Aff. ¶ 8; Horwitz Aff. ¶ 9; Rotenberg Aff. ¶ 9. DHS points to a previous draft of EPIC's time submissions that contained an obvious error: time billed for drafting a proposed scheduling order that had actually been filed two days earlier. Def.'s Opp'n at 13. But EPIC corrected this entry before filing their motion, and the Court has no reason to disbelieve EPIC's representation that this was nothing more than "a simple typo." Pl.'s Reply at 12.

DHS also questions the propriety of billing 2.30 hours "in preparation of filing documents with its complaint, even though there was no attachment to the complaint." Def.'s Opp'n at 13. But EPIC persuasively responds that 2.30 hours was required to prepare the "civil cover sheet, [Local Rule] 7.1 Statement, and summons to the agency, Attorney General, and the U.S. Attorney for the District of Columbia," in an era before e-filing—the attorney had to "prepare each of these documents, scan them (because several documents had to be signed), burn

them onto a CD, make several copies of each document, and then hand deliver them to the Court." Pl.'s Reply at 13. The Court cannot say that 2.30 hours to complete these activities is "unreasonable" as a matter of law, nor does this entry cast any doubt on the general accuracy or contemporaneousness of EPIC's billing records.

DHS also argues that some of the billing descriptions "are so cryptic as to be meaningless and thus should be excluded." Def.'s Opp'n at 12. Examples of such entries—quoted here in their entirety—include "'file,' 'conference,' 'research,' 'edit,' 'draft,' [and] 'review.'" Id. The Court agrees wholeheartedly: these one-word entries are insufficient to support a fee award. EPIC "offers no real excuse for its inadequate timekeeping habits," especially since it "was aware it would be seeking a fee award." Citizens for Responsibility & Ethics in Washington v. DOJ, 825 F. Supp. 2d 226, 230 (D.D.C. 2011); see also Compl. at 8 (requesting "costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E)").

Despite these problematic entries, the Court "does not find a complete disallowance of fees to be warranted—the records here are not so deficient as to prevent opposing counsel or the Court from 'mak[ing] an informed determination as to the merits of the application.'" Citizens for Responsibility & Ethics in Washington, 825 F. Supp. 2d at 231 (quoting Concerned Veterans, 675 F.2d at 1327). Given the dates, and the surrounding context of other, more-detailed entries, it is possible to glean some useful information based on some of these bare-bones descriptions. Hence, the Court will deduct 40% of this time from EPIC's fee award as a penalty for these shortcomings, and to incentivize future litigants to maintain sufficiently detailed billing entries. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); Citizens for Responsibility &

<u>Ethics in Washington</u>, 825 F. Supp. 2d at 231 (deducting 37.5% from FOIA requester's fee award due to insufficiently detailed billing entries).

> <u>**Excessively Vague Time Entries**</u>[18]
> Dec. 20, 2011: "File" – 1.20 hours at $240 per hour = $288
> May 31, 2012: "[D]iscussion" – 0.20 hours at $495 per hour = $99
> Sept. 17, 2012: "Conference" – 1.00 hours at $145 per hour =  $145
> Sept. 17, 2012: "Research" – 1.00 hours at $145 per hour =  $145
> Sept. 18, 2012: "Research" – 2.00 hours at $145 per hour = $290
> Sept. 19, 2012: "Draft" – 1.50 hours at $145 per hour  = $217.50
> Sept. 19, 2012: "Research" – 1.00 hours at $145 per hour  =  $145
> Sept. 20, 2012: "Research" – 0.50 hours at $505 per hour = $252.50
> Sept. 20, 2012: "Research" – 1.00 hours at $145 per hour =  $145
> Sept. 20, 2012: "Draft" – 1.00 hours at $145 per hour  =  $145
> Sept. 21, 2012: "Research" – 1.00 hours at $145 per hour =  $145
> Sept. 21, 2012: "Edit" – 1.00 hours at $145 per hour  =  $145
> Sept. 21, 2012: "Review" – 0.50 hours at $145 per hour =  $72.50
> Sept. 21, 2012: "Edit" – 0.50 hours at $145 per hour  =  $72.50
>
> Total originally requested for excessively vague entries: $2,307
> Deduction: 40% of $2,307 = $922.80

EPIC's fee award will be reduced accordingly.

### D.   Overstaffing and Overbilling

DHS argues that "EPIC seeks compensation for patently unnecessary and duplicative efforts, billing for work performed by 7 attorneys in this garden-variety FOIA case where the government is represented by a <u>single</u> attorney."   Def.'s Opp'n at 14.   The Court finds this objection to be conclusory and unpersuasive.   At the outset, the Court notes that EPIC's fee request of $37,197.75 is comparable in size to amounts that have been recently awarded in similar cases in this district.   <u>See, e.g.</u>, <u>EPIC v. DHS</u>, 811 F. Supp. 2d 216, 241 (D.D.C. 2011) (awarding $21,482 in FOIA action resolved on summary judgment); <u>Judicial Watch II</u>, 774 F. Supp. 2d at 234 (awarding $26,601.25 in FOIA action resolved on summary judgment, noting

---

[18] Some of these time entries originally requested payment at $245 per hour, but as discussed above, the Court has reduced the hourly rate to $145 per hour due to the bar admission status of the attorneys in question.   <u>See supra</u>, Section IV.B.

that "DOJ has neither suggested nor provided support for a conclusion that Judicial Watch's overall effort expended or requested lodestar amount are unusual for a FOIA case in this district or of similar complexity").

DHS's more specific objections fare no better.  The Court is not moved by DHS's unsupported assertion that "[a]ttorneys ordinarily do not charge their clients fees for time spent on internal meetings because they are often not the most productive use of time and have little relevance resolving the case."  Def.'s Opp'n at 15.  Even if DHS were correct, EPIC is not constrained to billing only for tasks that are the "most productive" uses of their time.  DHS is right that "[a]n attorney is charged with utilizing billing judgment when charging for his services," id. at 16, "[b]ut billing judgment is just that—judgment," Judicial Watch II, 774 F. Supp. 2d at 232.  EPIC's judgment to include time spent on internal conferences on their time sheets is not such a departure from the norm as to rebut the presumption of reasonableness afforded to a lodestar calculated from the Laffey matrix.  See Baker v. D.C. Pub. Schs., 815 F. Supp. 2d 102, 107-08 (D.D.C. 2011) (plaintiff's properly documented lodestar is presumed reasonable).

Similarly, the Court refuses to nitpick "a charge of 8.5 hours ($2,040)" for what DHS called "a 9-page boilerplate complaint for this simple, straightforward FOIA case."  Def.'s Opp'n at 16.  If FOIA's statutory requirements as applied to this case were so "simple" and "straightforward," DHS might have been better served by complying with them—rather than by ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court.  See Homeland Security Hr'g (statement of Rep. Speier, Ranking Member) ("They made a FOIA request back in April.  DHS ignored it.  And then EPIC filed a lawsuit . . . when the agency failed to comply with the FOIA deadlines.  And as a result of filing

the lawsuit, DHS disclosed to EPIC 285 pages of documents. . . . [Y]ou shouldn't stonewall FOIA requests.  You should comply with them within the deadlines.  No entity should be required to file a lawsuit . . . ."); <u>see also</u> <u>L.A. Gay & Lesbian Cmty. Servs. Ctr. v. IRS</u>, 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008) ("Reminding the Court of the waste of resources engendered by Defendant's failure to comply with its obligations hardly persuades the Court to reduce the fee award.").

Finally, DHS argues that "EPIC should not receive any fees for reviewing documents produced in response to its FOIA request."  Def.'s Opp'n at 20 (citing <u>Citizens for Responsibility & Ethics in Washington</u>, 825 F. Supp. 2d at 231 ("Plaintiff is not entitled to recover for time spent reviewing the documents it instituted this lawsuit to obtain.")).  The Court disagrees.  "[I]t would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation." <u>EPIC</u>, 811 F. Supp. 2d at 239-40.  True, "FOIA does not authorize fees for work performed at the administrative stage," <u>Nw. Coal. for Alternatives to Pesticides v. Browner</u>, 965 F. Supp. 59, 65 (D.D.C. 1997)—which frequently includes time spent reviewing documents.  Nor should fees be awarded for time expended in using documents produced.  But EPIC is only seeking fees for review of documents produced during this litigation, and DHS "has failed to provide any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of litigating this case."  <u>Rosenfeld v. DOJ</u>, 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012).  Accordingly, the Court finds that EPIC is entitled to fees generated during this work.

### E.   Fees Arising out of Issues on Which EPIC Did Not Prevail

Finally, DHS argues that EPIC improperly seeks fees for all of its work on this case, rather than solely with respect to issues on which they prevailed.  As the U.S. Supreme Court has

held, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  Hensley, 461 U.S. at 440.  But "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  Id.

At the outset, the Court notes that DHS conflates the "prevailing party" analysis under Hensley—which instructs a district court to consider whether partial defeats suffered by the plaintiff are severable for purposes of awarding fees—with the "public benefit" standard for overall "entitlement" to a fee award.  See Def.'s Opp'n at 8 ("[N]ot only is EPIC not a 'prevailing party' on that issue, it cannot demonstrate any 'public benefit' resulting from this release that would make it entitled to attorneys' fees.").  Hence, the fact that "[a]ll of the references to news articles cited in EPIC's brief occurred prior the release of the" Secret Service documents—and thus, the fact that a "public benefit" may not have accrued as a result of the disclosure of those specific documents—does not mean that EPIC cannot recover fees for this work.  Instead, the Court must consider whether, under Hensley, the losses EPIC suffered in this litigation were "distinct in all respects" from their victories, or, instead, were sufficiently "related" such that its fee award should not be reduced.

Having "considered the relationship between the amount of the fee [requested] and the results obtained,"  Hensley, 461 U.S. at 437, the Court finds that EPIC's limited defeats in this case are insufficient to justify a significant reduction in EPIC's fee award.  EPIC suffered only two "defeats" in this litigation.  First, the Court ruled against EPIC with respect to one of the seven Secret Service documents at issue during the summary judgment briefing.  But EPIC's work on this case cannot be thinly sliced on a document-by-document basis.  The controversy

over each individual document was not just "related" to the others—it was entirely overlapping. Any work that EPIC did in arguing for the release of document 10 would also have assisted it in its argument to release documents 4, 5, 6, 12, 13, and 16.  See, e.g., Pl.'s MSJ at 12 ("With respect to the above-mentioned documents, USSS failed to provide the required detailed justification to withhold non-exempt material as non-segregable.") (emphasis added); Def.'s Reply and Opp'n at 7 ("The challenged documents are numbered 4-6, 10, 12, 13, and 16, and consist of mostly contracts. . . .  They are withheld in full pursuant to several FOIA exemptions. The USSS has conducted a detailed segregability analysis of these documents and concluded that they cannot be segregated.") (emphasis added).  In Hensley the Supreme Court explained that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  Hensley, 461 U.S. at 440; see also Action on Smoking & Health v. Civil Aeronautics Bd., 724 F.2d 211, 215-16 (D.C. Cir. 1984) (distinguishing Hensley and refusing to sever fee award, finding that "the entire litigation centered on a set of common issues," various claims "involved a common core of facts and were based on related legal theories," and all claims were "part and parcel of a single matter") (internal quotation marks omitted).  So too here.  EPIC's summary judgment defeat with respect to one of the seven Secret Service documents does not warrant an excision of its fees for this work—assuming such an act of judicial microsurgery was even possible.

EPIC's second "defeat" was its opposition to DHS's motion for an extension of time to file its reply and opposition to plaintiff's cross-motion for summary judgment.  EPIC refused to consent to DHS's motion, and filed a six-page opposition brief.  Pl.'s Opp'n to Def.'s Mot. for Extension [Docket Entry 19].  The Court granted the extension.  Oct. 4, 2012 Minute Order.  In

contrast to arguments over individual Secret Service documents, any time spent on this briefing was completely "divorced from [and] unrelated to [EPIC's] principal FOIA claim." Judicial Watch I, 470 F.3d at 370.   This time was devoted solely to a losing issue.  The Court also notes that consent to such a motion, when the extension is sought in good faith, is generally considered a matter of professional courtesy.   Thus, the Court will modify EPIC's fee award to eliminate hours devoted to this issue:

> **Opposition to Motion for an Extension**
> Oct. 2, 2012: Attorney Rotenberg – 0.40 hours at $505 per hour = $202
> Oct. 2, 2012: Attorney McCall – 0.20 hours at $245 per hour = $49
>
> Total requested for work on unsuccessful opposition to motion for extension: $251
> Deduction: 100% of $251 = $251

EPIC's fee award will be reduced accordingly.

DHS also argues that "to the extent that the Court agrees with defendant that many or most of EPIC's fee demands are unwarranted or unsupported, the amount of 'fees on fees' should be reduced accordingly."  Def.'s Opp'n at 19.  The Supreme Court has approved reduction of partially unsuccessful fee applications to more appropriately reflect a plaintiff's success.  See INS v. Jean, 496 U.S. 154, 163 n.10 (1990).  Here, while EPIC has successfully defended most of its requested fees, the Court has partially rejected their application as well.  The Court is hesitant to go too deeply down this path, for fear of "spawn[ing] a Kafkaesque judicial nightmare of infinite litigation to recover fees for the last round of litigation over fees."  Id. at 163 (internal quotation marks omitted).  Therefore, in the interests of justice and judicial economy, the Court will exercise its discretion to make an across-the-board 15% reduction of EPIC's requested award of "fees on fees."  The 15% reduction accounts for EPIC's substantial success on its fee motion, but also the shortcomings of the petition—for example, the excessively vague billing entries and the improper hourly rates charged to recent law school graduates:

**"Fees on Fees" Requested**[19]
Attorney Stepanovich: $269.50
Attorney Rotenberg: $1,514.50
Attorney McCall: $3,993.50
Attorney Horwitz: $3,797.50
Attorney Butler: $24.50
Attorney Jacobs: $24.50
Attorney Scott: $24.50
Original request for "fees on fees": $9,648.50
Deduction for partial defeat in fee litigation: 15% of $9,648.50 = $1,447.28

EPIC's fee award will be reduced accordingly.

### V.    DHS's motion to strike will be denied.

Lastly, the Court must address DHS's motion to strike certain paragraphs of EPIC's reply brief, as well as some of the exhibits attached to that brief.  DHS argues that EPIC improperly disclosed settlement communications in violation of Federal Rule of Evidence 408.  The Court notes that the existence of settlement discussions was no secret—this Court ordered the parties to "confer and attempt to reach an agreement on fee issues."  Mar. 4, 2013 Order.  And DHS's opposition brief was the first to reference substantively the parties' settlement talks, arguing that EPIC was not entitled to "fees on fees" in part because "defendant made two settlement offers" that EPIC rejected.  Def.'s Opp'n at 18.  DHS objects not just that EPIC disclosed the existence of settlement discussions, but also the amount of DHS's settlement offers, "in an attempt . . . to influence the Court's resolution of its fee petition in its favor."  Def.'s Mot. to Strike [Docket Entry 28] at 3; see also id. ("In violation of Rule 408, EPIC revealed to the Court that Defendant had offered greater amounts in settlement in an obvious effort to substantiate the validity and the amount of its fee petition.").

---

[19] The Court notes that some portion of this amount has already been deducted due to the bar admission status of the attorneys in question.  See supra, Section IV.B.  In its discretion, the Court will use the entire original request to calculate this deduction.

At the outset, it is not clear that the Federal Rules authorize this Court to strike a portion of a reply brief in support of a motion for attorney's fees.  Motions to strike are typically filed under Federal Civil Rule 12(f), which allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Henok v. Chase Home Fin., LLC, 925 F. Supp. 2d 46, 52 (D.D.C. 2013).  At least one court in this district has pointed out that "Rule 7(a) lists the filings that constitute pleadings, but 'motions, affidavits, briefs and other documents are outside of the pleadings,'" and thus "are not subject to being stricken."  Id. at 52-53 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed. supp. 2012)); see also Michaels v. City of Vermilion, No. 05-2991, 2007 WL 893185, at *2 (N.D. Ohio Mar. 22, 2007) ("[W]hile some courts have employed Rule 12(f) to strike items such as an affidavit or a brief, or portions thereof, there is no basis in the Federal Rules for doing so.").  To be sure, some authority from outside the D.C. Circuit tends to support the opposite conclusion, reasoning that a district court's inherent power to manage its docket includes this authority.  See, e.g., Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010) ("We conclude that the District Court had jurisdiction to grant the motion to strike pursuant to its inherent powers.").

But the Court need not resolve this question, because even assuming that the Court has this power, it would not choose it exercise it here.  While the Court "has broad discretion in ruling on a motion to strike," this is a "drastic remedy," so "motions to strike are disfavored."  Uzlyan v. Solis, 706 F. Supp. 2d 44, 51 (D.D.C. 2010).  For three reasons, the Court will not exercise its discretion to take this "drastic" and "disfavored" step.  First, the Court need not—and did not—rely on the settlement figures included by EPIC in resolving this motion.  See Ali v. Dist. of Columbia Gov't, 810 F. Supp. 2d 78, 84 n.5 (D.D.C. 2011) ("[T]he Court makes no use

of some of the documents to which the District objects, and thus does not address their admissibility."). The fact that DHS offered to settle this dispute for an amount higher than they now argue EPIC is entitled to is neither surprising nor relevant to the Court's decision. Second, the courts in this circuit have refused to recognize a "federal settlement privilege," in re Subpoena Issued to CFTC, 370 F. Supp. 2d 201, 212 (D.D.C. 2005), aff'd in part on other grounds, 439 F.3d 740 (D.C. Cir. 2006), so DHS's interest in removing these paragraphs from the public docket is less compelling than, say, improper disclosure of information protected by the attorney-client privilege. That is so even assuming that the settlement offers would have been inadmissible at trial—a question the Court does not decide. Third, it was DHS that made the first substantive argument based on the parties' failed settlement negotiations in their own opposition brief. Def.'s Opp'n at 18. Striking EPIC's response to those arguments potentially raises some fairness concerns. Cf. Koch v. Cox, 489 F.3d 384, 390 (D.C. Cir. 2007) ("The prohibition against selective disclosure of confidential materials derives from the appropriate concern that parties do not employ privileges both as a sword and as a shield.") (internal quotation marks and citation omitted). Hence, in exercising its discretion, the Court will deny DHS's motion to strike.

\*   \*   \*

The Court's conclusions can be summarized as follows:

**Final Fee Calculations**
EPIC's original request: $36,847.75 in fees, $350 in costs

Deductions by the Court:
       $1,040 for hourly rate of attorney Brody
       $1,270 for hourly rate of attorney Horwitz (before bar admission)
       $1,300 for hourly rate of attorney Scott
       $775 for hourly rate of attorney Horwitz (after bar admission)
       $922.80 for vague billing entries
       $251 for failed opposition to motion for an extension

$1,447.28 for partial defeat in fee litigation

Total deduction: <u>$7,006.08</u>

Final award: $29,841.67 in fees, $350 in costs.

## **<u>CONCLUSION</u>**

For the foregoing reasons, EPIC's motion for attorney's fees will be granted in part and denied in part; DHS will be ordered to pay $29,841.67 in attorney's fees, and $350.00 in costs. DHS's motion to strike will be denied.  A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  <u>November 15, 2013</u>